**ABRAMS et al., Appellants,**

**v.**

**WORTHINGTON et al., Appellees.**

[Cite as *Abrams v. Worthington,* 169 Ohio App.3d 94, 2006-Ohio-5516.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–912.

Decided Oct. 24, 2006.

Maguire & Schneider, L.L.P., Karl H. Schneider, and James G. Vargo, for appellants.

Edwin J. Hollern Co., L.P.A., and Edwin J. Hollern, for appellees.

KLATT, Presiding Judge.

{¶ 1} Plaintiffs-appellants, Jeffrey and Joyce Abrams, appeal from a judgment of the Franklin County Court of Common Pleas that granted summary judgment in favor of defendants-appellees, Charles M. Worthington and Michael Worthington.[1] For the following reasons, we affirm.

{¶ 2} Worthington does business as "A Family Moving Company," which primarily provides household moving services. In late 2001, Joyce Abrams hired Worthington to move her and her husband's belongings into their newly built house in Pataskala, Ohio. One of the three Worthington employees who participated in the December 21, 2001 move was Chad Sullivan.

{¶ 3} Worthington had hired Sullivan to be a mover approximately four months before the Abramses' move. During the hiring process, Sullivan completed an application form that requested his personal data, employment history, and driving experience. Additionally, the manager of A Family Moving Company interviewed Sullivan. However, neither the application form nor the interview uncovered Sullivan's criminal record, which included convictions for theft, burglary, and receiving stolen property.

{¶ 4} At the time Worthington hired Sullivan, he already employed Sullivan's brother, Shawn Scott, as a mover. Worthington considered Scott a hard-working, well-mannered employee. About a year after Worthington hired Scott, he discovered that Scott had previously been convicted of passing bad checks. Due to Scott's satisfactory job performance, Worthington decided to retain Scott despite his criminal background. In March 2004, Scott left Worthington of his own accord for another job.

---

1. Apparently, Charles M. Worthington and Michael Worthington are the same person—Charles Michael Worthington. Because the Abramses never amended their complaint to reflect this fact, we name both as parties to this appeal, but hereinafter, we will refer to appellants simply as "Worthington."

{¶ 5} Unlike his brother, Sullivan did not prove to be a good employee. In January 2002, Worthington terminated Sullivan's employment because of his bad attitude, poor work performance, and unreliability.

{¶ 6} Approximately two months after Worthington fired Sullivan, on the night of March 14, 2002, Sullivan and four or five accomplices attacked Jeffrey Abrams in his backyard. They dragged him into his home, where they bound him and his wife. Jeffrey Abrams's assailants beat him and stole valuables, including Joyce Abrams's engagement ring, before driving away in the Abramses' car.

{¶ 7} Ultimately, the Pataskala Division of Police arrested Sullivan for his participation in the home-invasion robbery. While investigating Sullivan's involvement in the robbery, Deputy Chief Bruce Brooks interviewed Scott, who told Deputy Chief Brooks that Sullivan had driven him to the Abrams house prior to the robbery and told him of his plan to commit the robbery. After the robbery, the police found the Abramses' stolen car in the parking lot of Scott's apartment complex. The police also discovered that Scott owned a car that matched the description of the car driven by the perpetrators of the robbery. Despite these facts, Scott was never charged with any crime arising from the robbery. Sullivan, however, was charged with multiple offenses and pleaded no contest to one count of aggravated burglary, one count of aggravated robbery, two counts of kidnapping, one count of disrupting public services, and three counts of grand theft. He is now incarcerated.

{¶ 8} On March 11, 2004, the Abramses filed a complaint against Worthington, in which they asserted claims for negligent hiring and negligent retention. The Abramses alleged that they were injured because Worthington failed to exercise reasonable care in hiring and retaining both Sullivan and Scott.

{¶ 9} On May 6, 2005, Worthington moved for summary judgment, arguing that he could not foresee that his employees would participate in a robbery of one of his clients. The trial court agreed, and it granted judgment in Worthington's favor on August 3, 2005. The Abramses now appeal from that judgment.

{¶ 10} On appeal, the Abramses assign the following errors:

[1.] The trial court erred in failing to construe the evidence in favor of appellants.

[2.] The trial court erred by granting appellee's motion for summary judgment.

{¶ 11} Because they are interrelated, we will discuss the Abramses' two assignments of error together. Both assignments of error challenge the trial court's decision on summary judgment. Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on

summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 12} By the Abramses' first and second assignments of error, they argue that the trial court erred in granting summary judgment because they presented sufficient evidence to create a question of fact as to whether Worthington negligently hired and retained Sullivan and Scott. We disagree.

{¶ 13} Ohio courts have previously recognized the torts of negligent hiring and negligent retention. When defining the conduct these torts make actionable, this court has relied upon Restatement of Law 2d, Agency (1958), Section 213, which states:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
> * * *
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others.

See *Groner v. deLevie* (May 1, 2001), Franklin App. No. 00AP–1244, 2001 WL 438701; *Staten v. Ohio Exterminating Co.* (1997), 123 Ohio App.3d 526, 528–529, 704 N.E.2d 621; *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724, 739, 680 N.E.2d 161. A more succinct statement of the actionable conduct is included in the recently published Third Restatement of Agency:

> A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent.

Restatement of Law 3d, Agency (2006), Section 7.05(1).

{¶ 14} Under either formulation, if an employer, without exercising reasonable care, employs an incompetent person in a job that brings him into contact with others, then the employer is subject to liability for any harm the employee's incompetency causes. *Staten,* 123 Ohio App.3d at 529, 704 N.E.2d 621, quoting Restatement of Law 2d, Agency (1958), Section 213, Comment *d.* Liability for negligent hiring and negligent retention arises because the employer chooses to employ an individual who "had a past history of criminal, tortious, or otherwise

dangerous conduct about which the [employer] knew or could have discovered through reasonable investigation." *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 61, 565 N.E.2d 584.

{¶ 15} As with all other negligence-based torts, a plaintiff must prove the basic elements of negligence—duty, breach, proximate cause, and damages—in order to prevail on claims for negligent hiring and negligent retention. In Ohio, the existence of a duty depends upon the foreseeability of injury to the plaintiff. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614; *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." Id. at 77, 15 OBR 179, 472 N.E.2d 707.

{¶ 16} However, foreseeability alone does not necessarily impose a duty to act. *Estates of Morgan v. Fairfield Family Counseling Ctr.* (1997), 77 Ohio St.3d 284, 293, 673 N.E.2d 1311; *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 134, 652 N.E.2d 702. Even if an injury is foreseeable, a defendant has no duty to protect a plaintiff from or to control the conduct of a third person. *Conver v. EKH Co.,* Franklin App. No. 02AP–1307, 2003-Ohio-5033, 2003 WL 22176815, at ¶ 38; *Jackson v. Forest City Ents., Inc.* (1996), 111 Ohio App.3d 283, 285, 675 N.E.2d 1356; *Slagle v. White Castle Sys., Inc.* (1992), 79 Ohio App.3d 210, 216, 607 N.E.2d 45. In such situations, a duty arises only if the defendant shares a "special relation" with the plaintiff or the third person that justifies the imposition of the duty. *Estates of Morgan,* 77 Ohio St.3d at 293–294, 673 N.E.2d 1311; *Simpson,* 73 Ohio St.3d at 133–134, 652 N.E.2d 702; *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769; *Gelbman v. Second Natl. Bank* (1984), 9 Ohio St.3d 77, 78–79, 9 OBR 280, 458 N.E.2d 1262. These "special relations" include the employer and employee relationship. *Slagle,* 79 Ohio App.3d at 216, 607 N.E.2d 45. Thus, due to the nature of the employer/employee relationship, an employer has a duty to prevent foreseeable injury to others by exercising reasonable care to avoid employing an incompetent employee. See Restatement of Law 3d, Agency (2006), Section 7.05, Comment *a* (recognizing that Section 7.05(1) is a specific instance of the general tort-law principle that "[a]n actor in a special relationship with another owes a duty of reasonable care to third persons with regard to risks posed by the other that arise out of the relationship").

{¶ 17} In the case at bar, the employment relationship between Worthington and Sullivan was over before Sullivan participated in the home-invasion robbery. In the absence of this "special relation," Worthington owed no duty to the Abramses. Thus, we conclude that the trial court properly granted summary

judgment to Worthington on the negligent hiring and negligent retention claims premised upon Sullivan's employment.

{¶ 18} In reaching this conclusion, we are mindful that in analogous precedent, our analysis of the duty element turned solely upon whether injury to the plaintiff was foreseeable. In both *Staten* and *Evans,* the plaintiffs sought relief for the injuries caused by the criminal acts of the defendants' former employees. We found that the defendants did not owe the plaintiffs a duty of care because a reasonable person could not foresee that the ex-employees would injure the plaintiffs months after their employment ended. Essentially, our reasoning conflated the two elements necessary for a duty to arise in negligent hiring and negligent retention cases—the existence of an employment relationship *and* foreseeability of injury. We now clarify that both elements must be considered separately and, based upon the lack of an employment relationship between Worthington and Sullivan at the time of the Abramses' injuries, conclude that Worthington did not owe the Abramses a duty to prevent Sullivan from causing their injuries.

{¶ 19} Unlike Sullivan, Scott was a Worthington employee at the time of the home-invasion robbery, and thus, we must determine whether a reasonably prudent person in Worthington's position would foresee that Scott's actions would harm the Abramses. Because Scott was not one of the three employees who participated in the Abramses' move, Worthington played no role in bringing Scott into contact with the Abramses. Without Worthington's employment of Scott facilitating his causing harm to the Abramses, Worthington could not foresee the Abramses' injury. Thus, Worthington did not owe the Abramses any duty to prevent Scott from causing their injuries. Therefore, we conclude that the trial court properly granted summary judgment to Worthington on the negligent hiring and negligent retention claims premised upon Scott's employment.

{¶ 20} For the foregoing reasons, we overrule the Abramses' two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

Brown and McGrath, JJ., concur.