OPINION
{¶ 1} Relator-appellant, Michael Lindeman, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to respondent-appellee, the South-Western City School District Board of Education ("Board"). For the following reasons, we affirm.
 {¶ 2} The Board originally hired Lindeman on January 1, 1985. In July 2004, Lindeman and the Board executed a contract in which they agreed that Lindeman would *Page 2 
work as the Assistant Supervisor of Mechanics in Transportation from August 1, 2004 through the 2008-2009 school year.
 {¶ 3} In late 2005, facing mounting financial difficulties, the South-Western City School District ("School District") decided to implement a reduction in force. Lindeman discovered in February 2006 that the Board planned to suspend his employment contract as part of the reduction in force. In response, Lindeman contacted R. Kirk Hamilton, the School District Superintendent, and requested a meeting. During this meeting, Lindeman and Hamilton discussed the reduction in force and the suspension of Lindeman's contract. Hamilton told Lindeman that the management personnel tasked with deciding which positions to cut in the Transportation Department had determined that his position should be eliminated.
 {¶ 4} The suspension of Lindeman's contract became effective on June 30, 2006. Lindeman filed suit against the Board on December 7, 2006, asserting claims for breach of contract and wrongful discharge. Lindeman also sought a writ of mandamus ordering the Board to reinstate him to his previous position.
 {¶ 5} Both Lindeman and the Board filed motions for summary judgment. In its motion, the Board alleged that Lindeman failed to exhaust the administrative remedies provided to him in the South-Western Administrators' Association Management Team Agreement ("Agreement"). The Board maintained that this failure barred Lindeman's suit against it. Although Lindeman conceded that the Agreement governed his employment, he argued that he complied with the appeal provision contained in Article X, which addressed reductions in force. Lindeman claimed that his meeting with Hamilton constituted his appeal of the suspension of his contract. *Page 3 
 {¶ 6} After considering the motions, the trial court issued a decision and entry agreeing with the Board's argument. Based upon Lindeman's failure to exhaust his administrative remedies, as well as other grounds, the trial court granted the Board summary judgment.
 {¶ 7} Lindeman now appeals from that judgment entry and assigns the following errors:
 [1.] THE TRIAL COURT ERRED IN HOLDING THAT RELATOR-APPELLANT FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.
 [2.] THE TRIAL COURT ERRED HOLDING THAT RESPONDENT-APPELLEE COMPLIED WITH THE REQUIREMENTS OF R.C. 3319.171(B) IN ADOPTING ITS REDUCTION IN FORCE POLICY.
 [3.] THE TRIAL COURT ERRED HOLDING THAT RESPONDENT-APPELLEE COMPLIED WITH THE REQUIREMENTS OF R.C. 3319.171(C) IN ADOPTING ITS REDUCTION IN FORCE POLICY.
 [4.] THE TRIAL COURT ERRED HOLDING THAT RESPONDENT-APPELLEE COMPLIED WITH THE REQUIREMENTS OF ITS OWN REDUCTION IN FORCE POLICY.
 {¶ 8} Appellate review of summary judgment motions is de novo.Andersen v. Highland House Co., 93 Ohio St.3d 547, 548, 2001-Ohio-1607. "`When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.'" Abrams v. Worthington,169 Ohio App.3d 94, 2006-Ohio-5516, at ¶ 11, quoting Mergenthal v. Star Banc Corp.
(1997), 122 Ohio App.3d 100, 103. Civ. R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and *Page 4 
(3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Gilbert v. Summit Cty., 104 Ohio St.3d 660, 2004-Ohio-7108, at ¶ 6.
 {¶ 9} By Lindeman's first assignment of error, he argues that he pursued the applicable administrative remedy contained in the Agreement and, thus, the trial court erred in granting summary judgment to the Board. We disagree.
 {¶ 10} "`[P]rior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal.'" Nemazee v. Mount Sinai Med. Ctr.
(1990), 56 Ohio St.3d 109, 111, quoting Noernberg v. Brook Park (1980),63 Ohio St.2d 26, 29. This court-made rule of judicial economy prevents "`premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.'" Id., quoting Weinberger v. Salfi (1975),422 U.S. 749, 765, 95 S.Ct. 2457. Thus, although failure to exhaust administrative remedies is not a jurisdictional defect, a complainant must avail himself of any administrative remedies before invoking the trial court's jurisdiction. Anderson v. Interface Electric, Inc., Franklin App. No. 03AP-354, 2003-Ohio-7031, at ¶ 12. "`[N]o one is entitled to judicial relief * * * until the prescribed administrative remedy has been exhausted.'" Jones v. Chagrin Falls (1997),77 Ohio St.3d 456, 462, quoting Myers v. Bethlehem Shipbuilding Corp. (1938),303 U.S. 41, 50-51, 58 S.Ct. 459.
 {¶ 11} In the case at bar, the Agreement provided Lindeman with two potentially applicable administrative remedies. The Board argues that the Agreement required *Page 5 
Lindeman to follow the grievance procedure contained in Section 403. That section states:
 403.1 Level I
 Any member of the Management Team with a professional conflict based on an alleged violation or misinterpretation of the terms of this agreement by persons outside the Association may, within ten (10) days of the date of the incident, reduce to writing and present such conflict to the superintendent. Within five (5) days, the Superintendent or his/her designee will schedule a conference with the member, who may be accompanied by a member of the Association Executive Board.
 403.2 Level II
 If the matter is not satisfactorily resolved, the member or the Association may, within seven (7) days, appeal the decision to the Board of Education. The Superintendent shall schedule at the earliest possible date a special Board of Education meeting with an executive session to be held for the Board to consider and resolve the matter. An association representative will attend and participate in the executive session. The complainant may or may not be present at this meeting.
 {¶ 12} Lindeman, on the other hand, points to Section 1007 as the Agreement provision setting forth the required administrative remedy. Section 1007 appears in Article X, which governs reductions in force, and states, "[i]n the event an individual believes he has been dealt with in an inequitable manner, an appeal may be processed through the superintendent or his/her designee."
 {¶ 13} When construing the terms of a written contract, a court's principle objective is to ascertain and give effect to the intent of the parties. Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos. (1999),86 Ohio St.3d 270, 273. "The intent of the parties to a *Page 6 
contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Medical Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 14} Construing the language of Section 403 and Section 1007, we find that both sections could apply to an administrator who wanted to contest a reduction in force which resulted in the suspension of his contract. However, the two sections mandate different, and ultimately inconsistent, procedures. Although both sections contemplate the involvement of the Superintendent, Section 403 requires a written complaint, while Section 1007 does not. Furthermore, Section 403 requires an additional step — an appeal to the Board if the Superintendent cannot resolve the dispute — which does not appear in Section 1007.
 {¶ 15} "[W]here `two clauses of a contract appear to be inconsistent, the specific clause prevails over the general.'" Chan v. MiamiUniv. (Sept. 28, 1993), Franklin App. No. 93AP-309, quotingGibbons-Grable Co. v. Gilbane Bldg. Co. (1986), 34 Ohio App.3d 170, 175. Here, Section 1007 applies specifically to complaints stemming from reductions in force, while Section 403 applies more generally to complaints arising from the alleged violation or misinterpretation of any part of the Agreement. Therefore, we conclude that Section 1007 sets forth the administrative remedy that Lindeman needed to pursue before filing his complaint in the trial court.
 {¶ 16} Having identified the prescribed administrative remedy, we must now determine whether Lindeman availed himself of that remedy. As we stated above, Section 1007 required Lindeman to "appeal" any allegedly "inequitable" treatment to the Superintendent. The Agreement does not define "appeal." When neither the face nor the overall contents of a contract evidence the meaning of contractual language, courts must *Page 7 
give common words their ordinary meanings. In re All Kelley FerraroAsbestos Cases, 104 Ohio St.3d 605, 2004-Ohio-7104, at ¶ 29;Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. Thus, we turn to the ordinary meaning of "appeal" to determine what sort of action Section 1007 required from Lindeman. An "appeal" means "[a] proceeding undertaken to have a decision reconsidered * * *." Black's Law Dictionary (8 Ed. 2004) 105.
 {¶ 17} In the case at bar, Lindeman asserts that his meeting with Hamilton constituted his appeal. However, when asked about this meeting in their depositions, neither Lindeman nor Hamilton were certain whether their meeting fulfilled the requirements of Section 1007. Hamilton stated, "I know that I had a meeting with Mr. Lindeman. I don't know if that would be characterized as an appeal, but we did meet and discuss." (Hamilton Deposition at 27.) Asked whether the meeting was part of the appeal process, Lindeman did not answer "yes" or "no," but instead equivocated, responding "[b]asically." (Lindeman Deposition at 52.)
 {¶ 18} Furthermore, the tenor of the meeting was not in keeping with an appeal proceeding. According to Hamilton, he and Lindeman had a "general discussion" about Lindeman's "concerns with [the] decision [to suspend his contract] and * * * about what was best for that department and his concerns with how that department would continue to function efficiently and effectively without him there to perform that role, which he felt was critical." (Hamilton Deposition at 27.) Hamilton responded understandingly, and he "related that folks who [were] responsible for the operation of transportation and the group that was charged with determining the positions that should be reduced, determined that that's the position that should be reduced." (Hamilton Deposition at 28.) *Page 8 
 {¶ 19} Lindeman's recollection of the conversation diverges from, but does not contradict, Hamilton's recounting. Lindeman stated that:
 I went over to see the superintendent to ask him if he realized that that was my job position that was being cut because it was my understanding that the superintendent was happy with the job I was doing. * * * [H]is comment to me was that he had a lot of questions when he seen that and that whoever was handling all of that assured him that they had it all under control.
(Lindeman Deposition at 52.)
 {¶ 20} Notably, in explaining the substance of their meeting, neither Hamilton nor Lindeman stated that Lindeman called the meeting an "appeal." Also, neither recollection of the meeting included Lindeman alleging that the School District treated him inequitably in suspending his contract. Finally, neither Hamilton nor Lindeman recalled Lindeman asking Hamilton to reconsider or change his decision to eliminate Lindeman's job position as part of the reduction in force. Given the totality of these circumstances, we find that reasonable minds could only conclude that the meeting was not the "appeal" required by Section 1007.
 {¶ 21} As Lindeman failed to comply with Section 1007, he did not exhaust the available administrative remedies. Therefore, we conclude that the trial court acted properly when it refused to exercise jurisdiction over Lindeman's suit and granted summary judgment to the Board. Accordingly, we overrule Lindeman's first assignment of error.
 {¶ 22} In addition to granting the Board summary judgment for Lindeman's failure to exhaust his administrative remedies, the trial court found in the Board's favor on its other arguments. Lindeman challenges the trial court's rulings on those other arguments *Page 9 
in his remaining assignments of error. Because our resolution of Lindeman's first assignment of error makes those other arguments moot, we decline to rule upon Lindeman's second, third, and fourth assignments of error.
 {¶ 23} For the foregoing reasons, we overrule Lindeman's first assignment of error, and we find Lindeman's second, third, and fourth assignments of error moot. Therefore, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 McGRATH, P.J., and TYACK, J., concur. *Page 1