[No. D053072. Fourth Dist., Div. One. Apr. 3, 2009.]

TRISHA PHILLIPS, Plaintiff and Appellant, v.
TLC PLUMBING, INC., et al., Defendants and Respondents.

1134

**COUNSEL**

Robert S. Kostrenich for Plaintiff and Appellant.

Maxie, Rheinheimer, Stephens and Vrevich, Sean D. Stephens and Elizabeth I. Drake for Defendants and Respondents.

**OPINION**

**McDONALD, J.**—Plaintiff Trisha Phillips (Plaintiff) appeals a summary judgment entered in favor of defendants TLC Plumbing, Inc. (TLC), and Thad L. Condon (together Defendants).[1] Plaintiff filed the instant action after James Joseph Cain, one of TLC's former employees, shot and killed Judith Phillips (Judith), Plaintiff's mother. Plaintiff's action alleged a cause of action for negligent hiring and retention of Cain. On appeal, she contends the trial court erred by granting Defendants' motion for summary judgment because there are triable issues of material fact on her cause of action for negligent hiring and retention.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1999 TLC employed Cain as a plumbing service repairman. At the time Cain was hired, Condon, as owner of TLC, learned Cain was on parole and apparently had been convicted of a domestic violence and/or arson offense involving his then wife.

On April 2, 2003, TLC dispatched Cain on a service call to Judith's residence. On April 24, TLC dispatched Cain on another service call to her residence. On or about May 21, TLC terminated Cain's employment for misuse of a company vehicle, drug and alcohol use, and apparently threatening a coworker.

---

[1] The former party designations of Judith Phillips as plaintiff and Trisha Phillips as successor in interest, and also as trustee of Judith Phillips's trust, are incorrect and we do not use them in this appeal.

Cain and Judith apparently began a social relationship in April 2003 after his first service call. Their relationship seemingly evolved over time into a romantic one. On May 19, 2005, after Judith had ended their relationship and applied for a restraining order against Cain, he shot her. She died the following day and Cain was convicted of her murder.

In May 2006, Plaintiff filed the instant complaint alleging causes of action against Defendants, including a cause of action for negligent hiring and retention of Cain.[2] Defendants filed a motion for summary judgment, asserting there were no triable issues of material fact. They argued Cain was not their employee at the time he killed Judith and their alleged negligence was not a legal cause of her harm. Plaintiff opposed the motion, arguing Defendants owed her a duty of care and there were triable issues of material fact that precluded summary judgment. In their reply to the opposition, Defendants argued they did not owe Plaintiff a duty of care.

On January 25, 2008, following arguments of counsel, the trial court granted Defendants' motion for summary judgment. The court stated: "Specifically, Defendants have shown, and [Plaintiff has] failed to introduce evidence refuting, that there was no employer-employee relationship between Cain and Defendants at the time Cain shot and killed Judith Phillips. [Citations.] Rather, the parties agree that, at the time Cain killed [her], he had not been employed by TLC for approximately two years and had been in a years-long personal relationship with [her]. Thus, Defendants cannot be held vicariously liable for [Plaintiff's] injuries. Additionally, Defendants have shown, and [Plaintiff has] failed to introduce evidence refuting, that, even assuming Defendants' hiring and retention of Cain was negligent, it was not reasonably foreseeable that Cain would enter into a personal relationship with [Judith] which would later lead to Cain's shooting and killing of [her] years after he provided plumbing service to her. Although causation is usually an issue which cannot be resolved on summary judgment, in this case, there is no room for reasonable difference of opinion on causal nexus." On March 19, the court entered judgment for Defendants. Plaintiff timely filed a notice of appeal.

DISCUSSION

I

*Summary Judgment Standard of Review*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the

---

[2] The complaint also named Cain as a defendant.

moving and opposition papers except that to which objections have been made and sustained. [Citation.]" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; see *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)

*Aguilar* clarified the standards that apply to summary judgment motions under Code of Civil Procedure section 437c.[3] (*Aguilar, supra*, 25 Cal.4th at pp. 843–857.) Generally, if all the papers submitted by the parties show there is no triable issue of material fact and the " 'moving party is entitled to a judgment as a matter of law,' " the court must grant the motion for summary judgment. (*Aguilar*, at p. 843, quoting § 437c, subd. (c).) Section 437c, subdivision (p)(2), states: "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." *Aguilar* stated: "To speak broadly, all of the foregoing discussion of summary judgment law in this state, like that of its federal counterpart, may be reduced to, and justified by, a single proposition: *If a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment.* In such a case, . . . the 'court should grant' the motion 'and avoid a . . . trial' rendered 'useless' by nonsuit or directed verdict or similar device. [Citations.]" (*Aguilar, supra*, 25 Cal.4th at p. 855, italics added.)

"On appeal, we exercise 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' [Citation.] 'The appellate court must examine only papers before the trial court when it considered the motion, and not documents filed later. [Citation.] Moreover, we construe the moving party's affidavits strictly, construe the opponent's

---

[3] All statutory references are to the Code of Civil Procedure.

affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it.' [Citations.]" *(Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201–1202 [119 Cal.Rptr.2d 160].)

## II

### *Tort of Negligent Hiring and Retention Generally*

■ "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury. [Citation.]" *(Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333, 1339 [78 Cal.Rptr.2d 525].) "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide. [Citation.] However, the elements of breach of that duty and causation are ordinarily questions of fact for the jury's determination. [Citation.]" *(Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 278 [12 Cal.Rptr.3d 846].) Nevertheless, causation may be a question of law if on undisputed facts there can be no reasonable difference of opinion on causal nexus. *(Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1687 [19 Cal.Rptr.2d 601].)

■ "An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. [Citation.]" *(Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4th 1556, 1564–1565 [50 Cal.Rptr.2d 399].) "Liability for negligent hiring . . . is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees." *(Mendoza v. City of Los Angeles, supra,* 66 Cal.App.4th at p. 1339.) Negligence liability will be imposed on an employer if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *(Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1054 [58 Cal.Rptr.2d 122].) "California follows the rule set forth in the Restatement Second of Agency section 213, which provides in pertinent part: 'A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . . [¶] (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others[.]' *(Ibid.)*" *(Evan F. v. Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 836 [10 Cal.Rptr.2d 748].) "Liability for negligent . . . retention of an employee is one of direct liability for negligence, not vicarious liability. [Citation.]" *(Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 815 [52

Cal.Rptr.3d 376].) Comment d to section 213 of the Restatement Second of Agency explains at pages 459 to 460: ■ "The principal may be negligent because he has reason to know that the . . . agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor. [Citation.] [¶] . . . An agent . . . may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity. . . . [¶] One who employs another to act for him is not liable . . . merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. . . . [¶] Liability results . . . not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. . . ." In 2006, the Restatement Third of Agency was published, adopting section 7.05 as the counterpart to section 213 of the Restatement Second of Agency, and stating: ■ "(1) A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent. . . ." (Rest.3d Agency, § 7.05.) "Liability under this rule is limited by basic principles of tort law, including requirements of causation and duty." (Rest.3d Agency, § 7.05, com. c, p. 180.) Furthermore, "[l]iability under this rule also requires some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party." (Rest.3d Agency, § 7.05, com. c, illus. 5, p. 180.)

III

*Duty of Care Owed After Termination of Cain's Employment*

Defendants assert the trial court properly granted their motion for summary judgment because they did not owe any duty of care to Plaintiff at the time Cain shot and killed Judith, harm that occurred about two years *after* TLC terminated his employment. Because Plaintiff cannot prove that required

element of her cause of action for negligent hiring and retention, Defendants argue they are entitled to summary judgment.[4]

## A

Although Plaintiff argues Defendants untimely raised the absence of a duty of care by first raising that issue in their reply to Plaintiff's opposition to their motion for summary judgment and therefore cannot raise that issue on appeal, we exercise our discretion to consider on appeal the question of law whether in the undisputed circumstances of this case Defendants owed Plaintiff a duty of care at the time Cain shot and killed Judith. A party may raise a new issue on appeal if that issue is purely a question of law on undisputed facts. (*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709 [71 Cal.Rptr.3d 207]; *Francies v. Kapla* (2005) 127 Cal.App.4th 1381, 1386 [26 Cal.Rptr.3d 501]; *Frink v. Prod* (1982) 31 Cal.3d 166, 170 [181 Cal.Rptr. 893, 643 P.2d 476].) As noted above, "[t]he existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide. [Citation.]" (*Vasquez v. Residential Investments, Inc., supra*, 118 Cal.App.4th at p. 278.) Because it is undisputed Cain was not employed by TLC at the time he shot and killed Judith and Plaintiff has had an opportunity to address the issue of duty on appeal, we exercise our discretion to determine the question of law whether Defendants owed Plaintiff a duty of care at the time Judith was harmed by Cain.

## B

Although neither party cited, and we are not aware of, any California case addressing the instant question of law, cases from other jurisdictions support our conclusion that an employer does *not* owe a plaintiff a duty of care in a negligent hiring and retention action for an injury or other harm inflicted by a *former* employee on the plaintiff even though that employee, as in this case, initially met the plaintiff while employed by the employer. Accordingly, we agree with Defendants' assertion that because Cain's tortious act on Judith occurred *two years after* his employment with TLC was terminated, Defendants did not owe Plaintiff a duty of care at the time of Cain's tortious act and therefore cannot be held liable on a cause of action for negligent hiring and retention.

In *Abrams v. Worthington* (2006) 169 Ohio App. 3d 94 [2006 Ohio 5516, 861 N.E.2d 920] (*Abrams*), an Ohio court concluded a company did not owe a duty of care to a customer in connection with a former employee's

---

[4] Plaintiff does not assert on appeal that the trial court erred in granting summary adjudication for Defendants on her other causes of action alleged against Defendants.

posttermination tort committed against that customer and therefore was not liable on a negligent hiring cause of action. (*Id.*, 861 N.E.2d at pp. 922–924.) In *Abrams*, the company hired Chad Sullivan as a furniture mover, but did not uncover his criminal record that included convictions for theft, burglary, and receiving stolen property. (*Id.* at p. 921.) Four months later in December 2001, a married couple hired the company to move their possessions to their new home. Sullivan and two other movers participated in the move. In January 2002, the company terminated Sullivan's employment because of his bad attitude, poor work performance, and unreliability. (*Ibid.*) In March 2002, Sullivan and four or five accomplices went to the couple's home and attacked the husband, bound him and his wife, beat him, and stole valuable property. (*Id.* at pp. 921–922.) Sullivan was convicted of aggravated burglary, aggravated robbery, kidnapping, and grand theft. (*Id.* at p. 922.) The couple filed an action against the company, alleging causes of action for negligent hiring and negligent retention of Sullivan. The trial court granted the company's motion for summary judgment. (*Ibid.*)

On appeal, *Abrams* noted Ohio courts rely on section 213 of the Restatement Second of Agency (as quoted above) in defining the torts of negligent hiring and negligent retention. (*Abrams, supra,* 861 N.E.2d at pp. 922–923.) It also quoted section 7.05, subdivision (1) of the Restatement Third of Agency, which it stated provided a "more succinct statement" of those torts. (*Abrams,* at p. 923.) Noting "the existence of a duty depends upon the foreseeability of injury to the plaintiff" (*ibid.*), the *Abrams* court noted two of its prior cases involving analogous circumstances "found that the *defendants did not owe the plaintiffs a duty of care because a reasonable person could not foresee that the ex-employees would injure the plaintiffs months after their employment ended*" (*id.* at p. 924, italics added). *Abrams* stated: "Essentially, our reasoning [in those two cases] conflated the two elements necessary for a duty to arise in negligent hiring and negligent retention cases—the existence of an employment relationship *and* foreseeability of injury. We now clarify that both elements must be considered separately and, *based upon the lack of an employment relationship between* [*the defendant*] *and* [*the ex-employee*] *at the time of the* [*plaintiffs'*] *injuries, conclude that* [*the defendant*] *did not owe the* [*plaintiffs*] *a duty* to prevent [the ex-employee] from causing their injuries." (*Ibid.*, second italics added.) Accordingly, *Abrams* affirmed the summary judgment for the company. (*Ibid.*)

In *Staten v. Ohio Exterminating Co., Inc.* (1997) 123 Ohio App. 3d 526 [704 N.E.2d 621] (*Staten*), one of the two prior cases cited in *Abrams*, the court concluded a company was not liable for posttermination tortious conduct committed by a former employee against a customer. (*Id.*, 704 N.E.2d at p. 624.) In that case, the company hired Rommel Knox as a service technician trainee. (*Id.* at p. 622.) In June 1994, Knox and his supervisor were

in the home of a customer, who later reported a diamond ring was stolen. The company asked Knox to submit to a polygraph test, but he did not return to work and his employment was terminated shortly thereafter. In August 1994, Knox was charged with felony theft of the ring. In January 1995, another person shot and killed the customer while Knox was present. Knox was convicted of aggravated murder of the customer. The administrator of the customer's estate filed a wrongful death action against the company based on its alleged negligent hiring of Knox. (*Id.* at pp. 622–623.) The trial court granted summary judgment for the company on the wrongful death cause of action. (*Id.* at p. 622.)

On appeal, *Staten* quoted section 213 of the Restatement Second of Agency and noted that "[t]he existence of a duty depends upon the foreseeability of the injury." (*Staten, supra,* 704 N.E.2d at p. 623.) The appellant in *Staten* argued the company should have investigated Knox's background and refused to hire him to work inside customers' homes because of his criminal background.[5] (*Staten, supra,* 704 N.E.2d at p. 624.) *Staten* concluded: "Here, it was not foreseeable that Knox would have [the customer] killed *six months after his employment relationship with* [*the company*] *ended* . . . ." (*Ibid.,* italics added.) The court elaborated: "Even if Knox's convictions and criminal charges are considered, it was not foreseeable that, six months after he was fired from [the company's] employment, he would have [the customer] killed." (*Ibid.*) Accordingly, *Staten* affirmed the summary judgment for the company. (*Id.* at p. 625.) Although *Staten* did so ostensibly for lack of foreseeability, in *Abrams,* as discussed above, the court clarified that its reasoning in *Staten* was conflated and its decision was actually based on the *lack of a duty owed* by a company to a customer for a posttermination tort committed by a former employee. (*Abrams, supra,* 861 N.E.2d at p. 924.)

In *Evans v. Ohio State Univ.* (1996) 112 Ohio App. 3d 724 [680 N.E.2d 161], the other case cited in *Abrams,* the court concluded: "[W]e are unable to conclude that a duty of care extended to every member of 4-H [with whom] Waites may have come in contact . . . following his fair and clinic employment; more particularly, under the circumstances of this case, defendant's duty of care did not extend to the risk of foreseeing the misconduct that occurred." (*Evans,* 680 N.E.2d at p. 173.) Accordingly, *Evans* concluded the 4-H organization run by the university that had employed Waites was not liable for its negligent hiring or retention of Waites to the child against whom Waites committed tortious acts (i.e., sexual molestations) that occurred at his home *over one year after his employment was terminated.* (*Id.* at pp. 171–173.)

---

[5] Before the company hired Knox, he had been convicted of attempting to carry a concealed weapon and aggravated menacing, and had been charged with aggravated burglary, theft, assault, and domestic violence, which charges were either dismissed or not prosecuted. (*Staten, supra,* 704 N.E.2d at p. 624.)

Although we need not discuss the specific facts of each case, there are other analogous cases discussing posttermination torts that provide additional support for our conclusion that an employer does not owe a duty of care to a customer or other third party for posttermination tortious acts committed by a former employee or agent after termination of his or her employment or agency. (See, e.g., *Janssen v. American Hawaii Cruises* (1987) 69 Haw. 31 [731 P.2d 163, 166–167]; *Ledbetter v. United American Ins. Co.* (Ala. 1993) 624 So.2d 1371, 1373–1374 [summary judgment on negligent hiring action affirmed because alleged harm to plaintiff occurred after company had terminated the employment of agents/employees and therefore company owed plaintiff no duty of care at the time of the alleged harm]; cf. *Coleman & Co. Securities v. Giaquinto Family Trust* (S.D.N.Y. 2002) 236 F.Supp.2d 288, 304 [company did not owe plaintiff any duty to supervise after employee's employment had been terminated].)

In contrast to the many cases cited above that concluded an employer does not owe a duty (or is otherwise not liable) to a plaintiff for posttermination tortious conduct committed by a former employee, we found only one contrary case that appeared to recognize a former employer may be held liable for posttermination torts committed by a former employee. In *Abbott v. Payne* (Fla.Dist.Ct.App. 1984) 457 So.2d 1156, the court reversed an order dismissing a complaint that alleged employer liability for a tort committed by a former employee after the termination of his employment. (*Id.* at p. 1157.) In so doing, *Abbott* merely made the conclusory statement: "Liability can also attach for the conduct of an ex-employee." (*Ibid.*) In support of that statement, *Abbott* cites *Wayne v. Unigard Mutual Insurance Company* (Fla.Dist.Ct.App. 1975) 316 So.2d 581. (*Abbott,* at p. 1157.) However, based on our review of *Wayne,* we conclude its language does not provide support for the proposition stated in *Abbott.* Accordingly, *Abbott* does not persuade us to vary from our conclusion that a former employer does not owe a duty of care to a plaintiff for posttermination tortious conduct committed by a former employee after his or her employment is terminated.

■ The great weight of case authority from other jurisdictions that have applied the Restatement Second of Agency to posttermination torts by former employees supports our conclusion. Because the employer-employee relationship ends on termination of an employee's employment, we conclude an employer does *not* owe a plaintiff a duty of care in a negligent hiring and retention action for an injury or other harm inflicted by a *former* employee on the plaintiff even though that former employee, as in this case, initially met the plaintiff while employed by the employer.[6] Accordingly, we agree with

---

[6] In so concluding, we need not address the multiple factors to be considered in determining the existence and scope of a duty of care as set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561].

Defendants' assertion that because Cain's tortious act on Judith occurred *two years after* his employment with TLC was terminated, Defendants did not owe Plaintiff a duty of care at the time of Cain's tortious act and therefore cannot be held liable on a cause of action for negligent hiring and retention. Because based on the undisputed circumstances in this case Plaintiff cannot establish a required element of her cause of action for negligent hiring and retention of Cain (i.e., a duty of care), the trial court properly granted Defendants' motion for summary judgment. (§ 437c, subds. (c), (p)(2).)

## IV

### *Additional Support for Summary Judgment*

Although the absence of a duty of care owed by Defendants to Plaintiff provides a sufficient basis on which to affirm the summary judgment in this case, we nevertheless briefly address other grounds that may provide additional support for the summary judgment in Defendants' favor.

### A

Section 7.05 of the Restatement Third of Agency, published in 2006, is the counterpart to section 213 of the Restatement Second of Agency, which most courts have recognized as defining a cause of action for negligent hiring and retention of an employee. As quoted above, that new section (§ 7.05) provides: "(1) A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent. . . ." (Rest.3d Agency, § 7.05.) "Liability under this rule is limited by basic principles of tort law, including requirements of causation and duty." (Rest.3d Agency, § 7.05, com. c, p. 180.) Furthermore, "[l]iability under this rule also requires some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party." (Rest.3d Agency, § 7.05, com. c, illus. 5, p. 180.) Most importantly, for purposes of this case, comment c to section 7.05 expressly states: "*When the actor's tort follows termination of the actor's employment, the tort and the employment may not be causally related* for purposes of this rule." (Rest.3d Agency, § 7.05, com. c, illus. 5, p. 180, italics added.) Accordingly, section 7.05 of the Restatement Third of Agency states, in effect, there may be a lack of proximate or legal cause between a former employer's negligent hiring and retention of an employee and the posttermination tort committed by that former employee. Furthermore, regarding a somewhat analogous circumstance, comment c to section 7.05 also states: "Likewise, when the actor's tort occurs in the course of an extramural activity

unrelated to the actor's employment, the tort may lack a sufficient causal relationship to the actor's employment." (Rest.3d Agency, § 7.05, com. c, illus. 5, p. 180.) Accordingly, in the undisputed circumstances of this case, we doubt Defendants' alleged negligent hiring and retention of Cain was a proximate or legal cause of Cain's tortious conduct committed on Judith *two years after* Defendants terminated his employment, especially when Cain and Judith's initial social relationship began outside of Cain's employment duties and their romantic relationship did not begin until after his employment was terminated.

### B

█ Finally, there is language in one California case that also provides support for summary judgment for Defendants. In *Federico v. Superior Court* (1997) 59 Cal.App.4th 1207 [69 Cal.Rptr.2d 370], the court addressed the potential negligent hiring or other liability of a current employer for a current employee's tortious acts committed after work hours and off the employer's premises. (*Id.* at pp. 1213–1215.) After discussing section 213 of the Restatement Second of Agency and related cases, *Federico* stated: "We recognize that it was foreseeable Kaslar would come into contact with young male customers and visitors in the course of his work, and that he was actually introduced to plaintiff at the business place. However, even assuming defendant's prior awareness that those meetings were likely, or inevitable, such unavoidable encounters do not provide a basis upon which it can be found that defendant acted unreasonably at the time he hired Kaslar. *An employer is not charged with guaranteeing the safety of anyone his employee might incidentally meet while on the job against injuries inflicted independent of the performance of work-related functions.* Rather, as we have previously explained, liability for negligence can be imposed only when the employer knows, or should know, that the employee, because of past behavior or other factors, is *unfit for the specific tasks to be performed.*" (*Federico, supra,* 59 Cal.App.4th at p. 1215, italics added.) In the circumstances of this case, *Federico* provides support for summary judgment for Defendants. First, Defendants are not guarantors of the safety of all customers or other persons whom Cain incidentally met while performing plumbing service work for Defendants. Second, *Federico* provides support for a conclusion that Defendants could be held liable for negligent hiring or retention only if they knew, or should have known, that Cain was unfit to perform the plumbing service work for which he was hired by Defendants. Accordingly, *Federico* provides additional support for the trial court's order granting Defendants' motion for summary judgment.

## V

### *Remaining Contentions*

Because we resolve Plaintiff's appeal on the grounds discussed above, we need not address Plaintiff's assertions that there are triable issues of material fact regarding the element of causation and, in particular, whether Cain's conduct was a superseding cause of Plaintiff's harm.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

Benke, Acting P. J., and Irion, J., concurred.