Filed 10/8/13  Gallucci v. Los Angeles SMSA CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PAUL GALLUCCI, SR. et al., | |
| Plaintiffs and Appellants, | E054400 |
| v. | (Super.Ct.No. RIC10022557) |
| LOS ANGELES SMSA LIMITED PARTNERSHIP et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Paulette D. Barkley,

Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Paul Gallucci, Sr., in pro. per. for Plaintiff and Appellant.

Lisa Hunt, in pro. per. for Plaintiff and Appellant.

Paul Gallucci, Jr., in pro. per. for Plaintiff and Appellant.

O'Connor, Schmeltzer & O'Connor, Norman B. Schmeltzer, III, and Timothy J.

O'Connor for Defendant and Respondent Mobile Line Communications Corporation.

Buchalter Nemer, Morley G. Mendelson, Efrat M. Cogan and Sarah A. Syed for

Defendant and Respondent Celluphone, Inc.

1

Katten Muchin Rosenman, Alan D. Croll and Ryan J. Larsen for Defendant and Respondent Los Angeles SMSA Limited Partnership dba Verizon Wireless.

I

INTRODUCTION

Appellants and plaintiffs are Paul Gallucci, Sr. (Gallucci Sr.), Lisa Hunt (Hunt), and Paul Gallucci, Jr. (Gallucci Jr.), all of whom have filed a Third Amended Complaint (TAC) against defendants and respondents Los Angeles SMSA Limited Partnership dba Verizon Wireless (Verizon Wireless), Celluphone, Inc. (Celluphone), and Mobile Line Communications Corporation (Mobile Line).

The dispute between plaintiffs and defendants involves the retail sale of Verizon Wireless products. Gallucci Sr. was an authorized Verizon Wireless dealer. Hunt eventually purchased Gallucci Sr.'s business. Gallucci Jr. worked as a salesman for the business. The TAC asserts tort and contract claims based in part on contracts between Verizon Wireless's master agents, Celluphone and Mobile Line, and another entity, Time Rider, Inc. (Time Rider), and Hunt.[1] The written contracts were executed in October 2006, May 2007, and August 2008. The original complaint was filed in November 2010. Time Rider is not a party to the action.

The trial court sustained the demurrers of all three defendants to the TAC, the operative complaint, without leave to amend, and entered judgments in favor of

---

[1] Although Hunt claims to be doing business as Olivera's Coffee and Juice Bar, one of two corporations, Olivera's Coffee and Juice Bar, Inc. or Consulere, Inc., appear to have been parties to the third contract with Celluphone.

2

defendants in September and October 2011.

The plaintiffs, acting in propria persona, have each filed separate opening briefs, which are nearly identical. Defendants' respondents' briefs are also quite similar, citing most of the same cases.

We have independently reviewed the record and concluded that plaintiffs cannot state a cause of action. We find the legal arguments advanced by defendants compelling on the issues of the standing, the statute of limitations, and uncertainty. Therefore, the trial court did not abuse its discretion in not granting plaintiffs leave to amend. We affirm the judgment.

II

STANDARD OF REVIEW

On appeal from a judgment after a demurrer is sustained without leave to amend, the Court of Appeal "determine[s] de novo whether the complaint states facts sufficient to state a cause of action" or, alternatively, "whether the complaint or matters that are judicially noticeable disclose a complete defense." (*Leonte v. ACS State & Local Solutions, Inc.* (2004) 123 Cal.App.4th 521, 525, citing *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) In reviewing the complaint, the appellate court assumes the truth of well pleaded factual allegations but not the truth of contentions, deductions or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Kenneth Mebane Ranches v. Superior Court* (1992) 10 Cal.App.4th 276, 291 ["allegations constituting legal conclusions are not provisionally admitted for purposes of a demurrer"].) The appellate court will "affirm the judgment if it is correct on any ground

3

stated in the demurrer, regardless of the trial court's stated reasons." (*Leonte,* at p. 525, citing *Aubry,* at p. 967.)

The trial court's decision to deny leave to amend is reviewed for abuse of discretion. Plaintiffs have the burden of demonstrating abuse of discretion by showing how the complaint can be amended to state a cause of action. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) Leave to amend is properly denied where the facts are not in dispute and the nature of the law is clear but no liability exists. (*Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436.) To obtain leave, a plaintiff must articulate the manner in which he would amend and how it would change the legal effect of the pleading. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) The "potentially effective" amended complaint must be consistent with plaintiffs' theory of the case set forth in the superseded complaint. (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 731.) Where plaintiffs have already made amendments and the trial court previously granted leave to amend, the reviewing court defers to the trial court's denial of leave to amend unless there is a manifest abuse of discretion. (*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1830.)

III

FACTUAL AND PROCEDURAL BACKGROUND

The TAC weighs in at 135 pages, including exhibits, and purports to assert five causes of action for defamation, breach of contract, promissory estoppel, "intentional" negligence, and fraud. The TAC is composed of eight pages of a judicial council form pleading; 18 more pages containing 89 paragraphs of additional allegations; an additional

4

19 pages of unenumerated paragraphs; plus 100 pages of exhibits, including a declaration by Gallucci, Sr. Although the pleading lacks clarity and comprehensibility, we have extracted a summary of the material facts from the TAC's allegations.[2]

A. *The Allegations of the TAC*

1. *Gallucci Sr.*

Gallucci Sr. alleges that he owned and operated a Verizon Wireless "Authorized Retailer" store in Murrieta, California (the Store) from October 2006 to February 2009. However, Gallucci Sr. is not a party to the written contracts with Celluphone and Mobile Line in relation to the Store. Instead, another entity, Time Rider, is a party to one contract with Celluphone executed in October 2006 and one contract with Mobile Line executed in May 2007. In the SAC, plaintiffs admitted that Time Rider owned the Store.

Plaintiffs do not allege the existence of a written contract with Verizon Wireless. Instead, plaintiffs allege that, in August or September 2006, Gallucci Sr. and Verizon Wireless orally agreed that, if Gallucci Sr. met certain sales benchmarks, Verizon Wireless would make the Store a "Premium Retailer." Gallucci Sr. achieved the sales benchmarks by January 2007 but Verizon Wireless denied him "Premium Retailer" status.

---

[2] Plaintiffs purport to set forth the factual record. However, there are no specific citations to specific pages in the record. Instead, plaintiffs continually refer broadly to the entire form second amended complaint (SAC) and 74 pages of the SAC. The only other citation used is the entire TAC and 20 pages of the TAC. The appellate court is not required to comb through more than 100 pages to attempt to ascertain what specific allegations to which plaintiffs might be referring. (Cal. Rules of Court, rule 8.204(a)(1)(C) [briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

Gallucci Sr. tries to allege he has a written contract with Celluphone, except the contract is actually between Celluphone and Time Rider. Gallucci Sr. alleges he started doing business in 2007 with Mobile Line under a verbal contract and "an agreement in place"—except the May 2007 agreement is actually between Mobile Line and Time Rider. The purported verbal contract involved purchasing Verizon Wireless phones and service plans from Mobile Line using a line of credit.

In November 2007, Gallucci Sr. began planning a partnership with Hunt. On the day before Thanksgiving 2007, Mobile Line shut down the credit line, forcing Gallucci Sr. to purchase Verizon Wireless phones directly from other retail stores. A sales representative for defendants, Mike Ochoa, told plaintiffs that Verizon Wireless had accused Gallucci Sr. of committing fraud. In December 2007, Gallucci Sr. could no longer activate Verizon Wireless phones because Mobile Line had disabled his activation and authorization code, effectively shutting down his ability to do business. Gallucci Sr. purchased phones from a Verizon Wireless Corporate Communications Retail Store but, when he attempted to sell and activate these phones, they were reported as lost or stolen.

In March 2008, Gallucci Sr.'s "Verizon business designation was completely revoked." Celluphone sent Time Rider a letter stating it was terminating its contract with Time Rider. In March 2008, Verizon Wireless demanded Gallucci Sr. cease and desist doing business with or as Verizon Wireless.

2. *Hunt*

Hunt owned and operated a Verizon Wireless retail store from February 2008 to December 2009. She partnered with Gallucci Sr. in November 2007. Hunt learned that

Verizon Wireless employees had accused Gallucci Sr. of committing fraud by selling lost or stolen phones. In November or December 2007, a potential purchaser of the Store decided not to do business with Gallucci Sr. after being told by "Celluphone and/or Verizon [Wireless]" that Gallucci Sr. was being investigated for fraud.

In February 2008, Hunt purchased the Store. In February or March 2008, Hunt again "became aware" that Mobile Line and Verizon Wireless representatives were stating that Gallucci Sr. was committing fraud. Hunt was arguably the party to another contract with Celluphone executed in August 2008. In 2009, Gallucci Jr. was a store manager. Plaintiffs ultimately lost $47,000 from investors.

## B. Procedural History

In November 2010, Gallucci Sr. and Hunt filed their initial complaint but Gallucci Jr. was not named as a party.

In December 2010, plaintiffs filed a First Amended Complaint (FAC), adding Gallucci Jr. as an additional plaintiff. In February 2011, plaintiffs filed a stipulation to file an SAC, which was agreed to by all defendants.

Defendants demurred to each cause of action of the SAC and filed motions to strike. In April 2011, the trial court sustained defendants' demurrers but granted plaintiffs leave to amend. At the hearing on that demurrer, the court admonished plaintiffs: "[I]t is not up to [defendants] to try to sift through all of the allegations to figure out what the causes of action are . . . [¶] . . . when you provide me a lot of information but with no direction, I can't move this case forward" and "Defamation is a very specific cause of action . . . there is a statute of limitations issue. I don't know how

7

you're going to get over that. [¶] . . . [¶] I appreciate what you're trying to accomplish, but unless you state a cause of action within twenty days, I'm sustaining the next demurrer without leave to amend, because the uncertainty issue is just too broad in this complaint. So I'm going to give you the benefit of the doubt and allow you the twenty days' leave to amend. [¶] . . . [¶] . . . But it's not going to go further than that, and the minute order will reflect this is your last opportunity.

The TAC presents the following causes of action on judicial council forms:

1. Intentional Tort – Defamation;

2. Intentional Tort – Breach of Contract;

3. Intentional Tort – Promissory Estoppel;

4. Intentional Tort – Intentional Negligence;

5. Fraud – Violation of Business and Professions Code section 17200.

After plaintiffs filed the TAC, all defendants filed demurrers and motions to strike. In August 2011, the trial court sustained the demurrers without leave to amend and the motions to strike were rendered moot.

IV

DISCUSSION

A. *The Separate Causes of Action*

One problem with the complaint overall is that plaintiffs are not the real parties in interest to virtually all of the claims. According to two contracts attached to the TAC, the real party in interest is Time Rider, which is not a party to this action. As we comment in footnote 1, the third agreement seems to be between Celluphone and a corporation, not

8

Hunt. With that issue in mind, we review the five causes of action.

*1. The First Cause of Action for Defamation*

Plaintiffs generally allege that Gallucci Sr. was called a "fraud" by defendants. However, plaintiffs do not allege that any defendant made defamatory statements about Hunt or Gallucci Jr. Accordingly, the demurrer to their claims was properly sustained on this cause of action.

The first cause of action alleging defamation of Gallucci Sr. is barred by the one-year statute of limitations. (Code Civ. Proc., § 340, subd. (c); *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1246.) The claim accrues when the statement is "published," or "when the defendant communicates the defamatory statement to a person other than the person being defamed." (*Id*. at p. 1247.)

Gallucci Sr. was told that defendants had falsely accused him of committing fraud in November and December 2007 or in February or March 2008. Thus, the statute of limitations expired one year later, in November or December 2008, or at the very latest, March 2009. The case was not filed until November 2010, well over a year too late. The claim is therefore time-barred.

In their opening briefs, plaintiffs do not address or analyze the statute of limitations issue. Plaintiffs' burden on appeal includes the obligation to present argument and legal authority. This requires more than simply stating that the trial court's ruling was incorrect. It is not the appellate court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368; *Cahill v. San Diego Gas & Electric Co.*

9

(2011) 194 Cal.App.4th 939, 956.) Plaintiffs have waived the right to contend that the claims are not barred by the statute of limitations on appeal. (*EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 775.)

Furthermore, plaintiffs cannot rely on equitable tolling as proposed in their reply briefs. A party seeking equitable tolling bears the burden of proving its applicability. (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 912.) "To establish that equitable tolling applies, a plaintiff must prove the following elements: fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff in discovery of those facts." (*Sagehorn v. Engle* (2006) 141 Cal.App.4th 452, 460-461, quoting *Federal Election Com'n v. Williams* (9th Cir. 1996) 104 F.3d 237, 240-241.)

Plaintiffs did not plead any facts that would support these elements. Plaintiffs did not allege that defendants concealed any facts or that plaintiffs were not aware of the facts. To the contrary, the allegations in the TAC establish the opposite conclusion. Plaintiffs admit in the TAC that, by March 2008 at the latest, they were aware that defendants had called Gallucci Sr. a "fraud." Thus, as a matter of law, there can be no "concealment" to establish tolling.

*2. The Second Cause of Action for Breach of Contract*

The second cause of action alleging breach of contract is barred by the two-year statute of limitations to the extent it is based upon an oral contract. Moreover, it fails because plaintiffs fail to identify which contract was breached, what term was breached,

10

how it was breached, and how plaintiffs were injured by that breach.

If a pleading demonstrates that a plaintiff is not a real party in interest, it is subject to a general demurrer. (*Chiatello v. City and County of San Francisco* (2010) 189 CaI.App.4th 472, 480-481 [affirming demurrer sustained without leave to amend where plaintiff lacked standing].) Where the gravamen of a complaint is harm to a corporation, only the corporation has standing to bring the claims alleged. (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312-313.)

Plaintiffs' allegations clearly demonstrate that they each lack standing to bring the claims alleged in the TAC, including the claim for breach of contract. Hunt does not allege any right or interest that was impugned, or even implicated, by the conduct alleged in the TAC. Gallucci Jr. is barely mentioned in the TAC. To the contrary, plaintiffs allege that defendants have breached an oral or written agreement with Gallucci Sr.

Gallucci Sr. is similarly barred from bringing suit. The entity that owned the Store was Time Rider (a corporation), not Gallucci Sr. In the SAC, plaintiffs acknowledged as much by stating that Time Rider was the real party in interest and was financially destroyed by defendants' slander and defamation of Gallucci, Sr. Time Rider is the party to the contracts with Celluphone and Mobile Line attached to the TAC —not Gallucci Sr. Facts appearing in exhibits attached to the complaint "will be accepted as true and, if contrary to the allegations in the pleading, will be given precedence." (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627; *Messerschmidt Development Co. v. Crutcher Resources Corp.* (1978) 84 Cal.App.3d 819, 825.) Accordingly, the demurrer was properly sustained for lack of standing.

11

Furthermore, the statute of limitations for an action upon an oral contract is two years. (Code Civ. Proc., § 339, subd. (1).) With respect to Verizon Wireless and Mobile Line, plaintiffs allege they were doing business under a verbal contract until Verizon Wireless refused them "Premium Retailer" status and Mobile Line shut down plaintiffs' credit line and activation code. These events occurred in or before January 2008. The original complaint was filed more than two years later in November 2010. The claim is therefore time-barred.

In their reply briefs, plaintiffs again contend the limitations period was subject to equitable tolling. However, there are no allegations that defendants concealed any facts. To the contrary, plaintiffs allege that they knew by January 2008 their contracts with defendants had been breached. Accordingly, the claim is time-barred and the demurrer was properly sustained on that basis.

*3. The Third Cause of Action for Promissory Estoppel*

The SAC did not assert a cause of action for promissory estoppel. This was an entirely new claim asserted in the TAC, filed after defendants' demurrers to the SAC were sustained with leave to amend. As plaintiffs were not granted leave to assert entirely new causes of action, the demurrer was properly sustained on that basis. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) § 7:148.1, p. 7(I)-59, citing *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1015.)

Additionally, the third cause of action for promissory estoppel is barred by the two-year statute of limitations to the extent it is based upon any oral contract. (Code Civ. Proc., § 339, subd. (1); see *Jefferson v. J. E. French Co.* (1960) 54 Cal.2d 717, 718-719.)

12

The promissory estoppel claim is premised on the allegations that defendants breached their oral contracts with plaintiffs in November 2007 and December 2007. Thus, plaintiffs had to assert their claims by December 2009. Any claim for equitable tolling fails for the same reasons set forth above. Plaintiffs waited until November 2010 to initiate this action. Accordingly, the promissory estoppel claim is time-barred.

Promissory estoppel also fails because the TAC does not identify any clear or unambiguous promise, breach of that promise, actual reliance, reasonable and foreseeable reliance, detrimental reliance or unavoidable injustice; all of which are required for a promissory estoppel claim. Furthermore, promissory estoppel is recognized as a species of or substitute for consideration. (*Wade v. Markwell & Co.* (1953) 118 Cal.App.2d 410, 419.) Accordingly, when a promisee's reliance is bargained for, and the contract thus contains consideration, a claim for breach of contract exists and promissory estoppel is not applicable. (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249.) Because plaintiffs allege mutual consideration—the promise of "Premium Retailer" status and a line of credit in exchange for the purchase of Verizon phones and services— the doctrine of promissory estoppel is inapplicable and the claim fails. The demurrer was properly sustained for this reason as well.

*4. The Fourth Cause of Action for "Intentional" Negligence*

The fourth cause of action alleging "intentional" negligence confuses intentional tort with negligence. Negligence, by definition, is not intentional. Thus, it is not an actual cause of action. Plaintiffs' claim fails under either theory because plaintiffs fail to allege which of defendants' actions were "intentional" and plaintiffs fail to identify any

13

duty owed to them by defendants. However, to the extent plaintiffs are attempting to assert a negligence claim, the statute of limitations is two years. (Code Civ. Proc. § 335.1.)

The claim is premised on the allegation that defendants had a legal duty not to practice unfair and fraudulent business practices and defamation against plaintiffs. The alleged defamatory statements about Gallucci Sr. were circulated between November 2007 and March 2008. Thus, the statute of limitations on any purported negligence claim expired in March 2010 at the latest. Plaintiffs did not initiate this action until November 2010. Thus, any purported negligence claim is time-barred. For the reasons set forth above, the admissions in the TAC preclude any claim of equitable tolling.

The negligence claim would fail even if it was timely. To establish a claim, plaintiff must plead the existence of: (1) a legal duty to use due care; (2) the breach of that duty; and (3) that such breach was the proximate cause of the plaintiff's alleged injury. (*Federico v. Superior Court* (1997) 59 Cal.App.4th 1207, 1214.) "The existence of a duty of care toward an interest of another worthy of legal protection is the essential prerequisite to a negligence cause of action." (*Software Design & Application v. Hoefer & Arnett* (1996) 49 Cal.App.4th 472, 478, citing *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.) In particular, courts have declined to impose "broad tort duties in arms-length business dealings." (*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1042; see also *Worldvision Enterprises, Inc. v. American Broadcasting Companies, Inc.* (1983) 142 Cal.App.3d 589, 595.)

14

Plaintiffs allege that defendants had a duty not to practice unfair and fraudulent business practices and defamation but those are different causes of action, separately pleaded in the TAC as the first and fifth causes of action, respectively. Plaintiffs do not allege any relationship between themselves and defendants giving rise to any duty of care to support a negligence claim. To the extent plaintiffs had any legal relationship with defendants, it consisted of an arms-length business transaction, negating any tort duties. Absent the requisite duty of care, there can be no claim for negligence as a matter of law.

Lastly, even if there was a duty of care, there are no allegations in the TAC that defendants breached any such duty to any party. Plaintiffs merely list purported statements of law and claim that "Defendants failed to conform to the required standard of conduct," making it impossible to discern the actual conduct that supposedly gives rise to the claim. Absent an alleged breach of a duty of care, the negligence claim fails. (See *Federico v. Superior Court, supra*, 59 Cal.App.4th at p. 1214.) For all of these reasons, the demurrer was properly sustained.

5. *The Fifth Cause of Action for Violation of California Business and Professions Code Section 17200*

The fifth cause of action alleging breach of section 17200 of California's Business and Professions Code fails because it does not allege any unlawful, unfair or fraudulent conduct and does not seek any available remedy. The unfair competition law (UCL) establishes three alternative varieties of unfair competition: acts or practices which are unlawful, or unfair, or fraudulent. (Bus. & Prof. Code, §§ 17200, et seq.)

15

First, an unlawful claim is stated by "borrowing" a violation of another law, generally a consumer protection statute. (See *Chern v. Bank of America* (1976) 15 Cal.3d 866.) Second, a business practice is "fraudulent" if "members of the public are likely to be deceived." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951.) Third, an "unfair" business practice "occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantively injurious to consumers." (*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 530.) However, "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 182.) In a claim concerning business such as the one alleged herein, an unfair claim can only be stated where the complaint alleges "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Id*. at 187.)

Plaintiffs' allegations do not give rise to any claim under the UCL. Only Time Rider would arguably have standing. And even in that case, other than a "Cel-Tech" claim between competitors, the unfair competition law has no application in commercial disputes between two businesses. "[W]here a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contracts, a corporate plaintiff may not rely on the UCL for the relief it seeks." (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 135.) Plaintiffs

16

are not consumers. Instead, they allege a business dispute with defendants. Thus, the UCL does not apply here.

Even if the UCL did apply, plaintiffs have not stated a claim under any of the three prongs. Plaintiffs merely list purported statements of law and fail to allege actionable conduct. There is no "incipient violation of an antitrust" law for a Cel-Tech claim. There is no "unlawful" claim because defendants are not alleged to have violated any statutes. There is no "unfair" claim because there are no allegations of unfair conduct. Finally, plaintiffs do not even attempt to plead the elements of a fraud claim, much less show how members of the public would likely be deceived. The demurrer to the UCL was therefore properly sustained.

Plaintiffs' Business and Professions Code section 17200 claim also fails because the TAC seeks damages—not restitution or an injunction. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266; *Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440.) If a court finds there has been "unfair competition" it may "make such orders . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (Bus & Prof. Code, § 17203; *Day v. AT & T* (1998) 63 Cal.App.4th 325, 340.) Plaintiffs do not allege that Mobile Line obtained any money or property from them that could be restored. Nor do plaintiffs seek an injunction. The demurrer to the UCL was therefore properly sustained for this reason as well.

17

*B.  Uncertainty*

A demurrer for uncertainty will be sustained if the defendant cannot reasonably respond; i.e., it cannot reasonably determine what issues must be admitted or denied, or what counts or claims are directed against him.  (Code Civ. Proc., § 430.10, subd. (f); *Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 616.)  At the very least, a pleading must "set forth the *essential facts* of the case with reasonable precision and with sufficient particularity to acquaint the defendant with the nature, source and extent of [the] cause of action."  (*Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 157.)

The judicial council portion of the TAC contains confusing and contradictory allegations.  The material allegations are ambiguous, especially as to the parties involved, their alleged acts, and the timing.  It is nearly impossible to discern what allegations in the TAC implicate which defendant and how the few facts alleged relate to the causes of action.  The allegations make it impossible to know which defendant is the subject of the breach of contract claim and whether the agreement is oral or written.

None of the causes of action are broken down by party, so each defendant is forced to guess which cause of action is being directed against it by which plaintiff.  Plaintiffs' practice of referring to "Defendants" interchangeably makes it impossible to know which of the three defendants is the subject of the allegations.  The TAC also contains 100 pages of exhibits but no explanation of their relevance or how or why they apply to the claims asserted.  Thus, the demurrers to the TAC were properly sustained for uncertainty.

18

*C. Demurrers Sustained Without Leave To Amend*

Plaintiffs filed four separate complaints. Plaintiffs were given multiple opportunities to state a valid cause of action. They have not articulated how they could allege additional facts to state any valid legal claim or explain how any such facts could change the legal deficiencies set forth in the demurrer.

The TAC suffers from the same defects in form and content as the complaint, the FAC and the SAC. Plaintiffs have not corrected their problems on appeal by relying on newly alleged facts that were never set forth in any of the underlying complaints. Among these entirely new assertions by plaintiffs on appeal are that Hunt or Gallucci Jr. entered into a "merge/new owner/new written contract" with defendants and that there was an agreement concerning a new name or the dissolution of Time Rider. Additionally, plaintiffs now claim they were forced to merge two separate stores and businesses together using Hunt's Verizon-approved sales and activation code, causing severe tax problems. There are no allegations in the TAC about merging two stores, Hunt's activation codes, or Hunt's tax problems.

Facts that were not presented to the trial court and are not part of the record on appeal cannot be considered on appeal. The new facts identified in the opening brief cannot be considered on appeal. (*Pulver v. AVCO Financial Services* (1986) 182 Cal.App.3d 622, 632.) "'It has long been the general rule and understanding that "an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration."'" (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1239.) Accordingly, a brief cannot make arguments relying on

19

alleged facts outside the record, and statements in a brief based upon improper matter are disregarded by the appellate court. (*Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625.)

Likewise, theories based upon facts not raised in the trial court cannot be asserted for the first time on appeal. This rule is based on fairness — it would be unfair, both to the trial court and opposing litigants, to permit a change of theory on appeal. (See *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767; *Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 251.)

It would be impossible for plaintiffs to overcome the statute of limitations, the lack of standing, and the other deficiencies. Accordingly, the trial court did not abuse its discretion by sustaining the demurrers without leave to amend.

V

CONCLUSION

We reject plaintiffs' appeals and affirm the trial court's order sustaining the demurrers without leave to amend. We affirm the judgment in favor of defendants.

In the interests of justice we order the parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


McKINSTER
Acting P. J.


KING
J.

20