[No. C027388. Third Dist. Nov. 14, 1997.]

JAMES FEDERICO et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
JENRY G., Real Party in Interest.

1208

## COUNSEL

Edson, LaPlante & Spinelli, John M. LaPlante and Ross R. Nott for Petitioners.

No appearance for Respondent.

Eggleston & Taylor, Steven B. Eggleston and Corey E. Taylor for Real Party in Interest.

## OPINION

**PUGLIA, P. J.**—Petitioners James Federico and Federico College of Hairstyling seek a writ of mandate directing respondent superior court to grant their motion for summary judgment. In the underlying action real party in interest (plaintiff) sued petitioners (defendants) for damages arising out of an act of sexual molestation perpetrated by defendants' employee, John Kaslar. The superior court granted defendants' motion for summary adjudication on all but one of plaintiff's several causes of action. The only count to survive is premised on the theory that defendant Federico (further references to defendant in the singular are to James Federico, individually) knew, or should have known, that Kaslar had suffered prior convictions for sexually molesting juvenile males, and was negligent in hiring him to manage and supervise the training of students at the Federico College of Hairstyling. We conclude that defendants are entitled to prevail on the single remaining cause of action, and that the trial court should therefore have granted the motion for summary judgment.

The general principles which govern our review of the trial court's ruling on a summary judgment motion are familiar. ■ " 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. . . . To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial.' (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46] . . . .) [¶] The pleadings identify the issues to be considered on a motion for summary judgment. (*Sadlier* v. *Superior Court* (1986) 184 Cal.App.3d 1050, 1055 [229 Cal.Rptr. 374].) The defendant must present facts to negate [an essential element of] each claim as framed by the complaint or to establish a defense. Only then must the plaintiff demonstrate the existence of a triable, material issue of fact. . . ." (*Wattenbarger* v. *Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746, 750 [33 Cal.Rptr.2d 732], and see *Ferrari* v. *Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].)

■ The elements of a cause of action for negligence are (1) the existence of a legal duty to use due care; (2) a breach of that duty; and (3) the breach

as a proximate cause of the plaintiff's injury. (*Wattenbarger* v. *Cincinnati Reds, Inc.*, *supra*, 28 Cal.App.4th at p. 751.) "As a practical matter, these elements are interrelated, as the question whether an act or omission will be considered a breach of duty or a proximate cause of injury necessarily depends upon the scope of the duty imposed. . . ." (*Ibid.*)

Defendants' motion for summary judgment and plaintiff's opposition thereto, together with the parties' supporting evidence, provide the following background. In December 1991, defendant hired Kaslar to supervise student training and perform various other administrative duties, including the management of financial aid services, at the Federico College of Hairstyling in Sacramento. At the time he was hired, Kaslar had been twice convicted of criminal offenses arising out of sexual misconduct with young males. In 1979 he was found guilty in El Dorado County of violating Penal Code section 647a (annoying or molesting a minor), and in February 1991 he was convicted in Riverside County of violating Penal Code sections 288a, subdivision (b)(2) (oral copulation with a person under the age of 16) and 286, subdivision (b)(1) (participating in an act of sodomy with a person under the age of 16).

Defendant had previously employed Kaslar as an instructor in his South Lake Tahoe hairstyling college between 1975 and 1978. Kaslar left that position when he was arrested on the charges which led to the El Dorado County conviction. He then worked from 1979 until 1990 at the Palm Springs Beauty College in Riverside County. That job ended when he was charged with the Riverside County offenses for which he was convicted in 1991.

Kaslar resumed working for defendant in December 1991. Defendant did no background or reference check prior to offering Kaslar the position of supervisor at the Federico College in Sacramento. Defendant explained that he had known Kaslar for many years, and was already familiar with his qualifications and background. Kaslar, upon his return to Sacramento, took up residence in a house located on Sheila Way. This home was owned by defendant, who rented it to Kaslar.

In March 1993, Amparo G., plaintiff's mother, enrolled at the Federico College in Sacramento. While Amparo was a student there, plaintiff visited the school on a number of occasions, for the purpose of having his hair cut, and also to meet his mother for lunch or to pick her up. In the course of these visits, plaintiff became acquainted with Kaslar. Their contacts at the school were not extensive. Kaslar never personally cut plaintiff's hair, although he supervised Amparo while she did so. Once or twice Kaslar gave plaintiff

money for the purpose of buying Kaslar lunch and bringing it back to the school. Plaintiff estimated he met Kaslar a total of three or four times at the school. During these visits, plaintiff was never alone with Kaslar.

In April 1993 Kaslar asked for and received permission from plaintiff's mother to take either plaintiff or his older brother on a Sunday outing to Old Sacramento. The record contains differing versions as to where and when this invitation was made and accepted, but it is not disputed that on the appointed day Kaslar picked up plaintiff at plaintiff's home. After making the promised trip to Old Sacramento, the pair went to Kaslar's Sheila Way home, where Kaslar engaged in an act of oral copulation with plaintiff. It is that incident which gave rise to the present complaint.

Defendant submitted additional evidence, in the form of declarations and deposition testimony, to show that the Federico College of Hairstyling had a general policy barring the presence of unsupervised children at the school, and that students were not allowed to "babysit" their own children while at the school. To the contrary, according to defendant, children were only allowed on the premises to receive services. Defendant also established that Kaslar's duties involved the supervision of the students and administrative functions, and that Kaslar did not personally cut the hair of customers.

In his opposition papers, plaintiff countered defendant's showing with evidence that not only he, but other children, were often present at the Florin Road facility for reasons other than having their hair cut, e.g., to visit parents who were students, and that on occasion these visiting children had direct contact with Kaslar.

The parties also proffered conflicting evidence regarding whether, and to what extent, defendant was aware of Kaslar's history of deviant sexual conduct with young males at the time Kaslar was hired in 1991. Defendant relied primarily on his own deposition, where he testified that he had no knowledge of Kaslar's convictions for sexual offenses or the facts underlying them until after the incident involving plaintiff came to light. In addition, defendant submitted excerpts from Kaslar's deposition, wherein Kaslar testified that he did not inform defendant about the Riverside County proceedings, although he told his parole officer that he had done so.

Plaintiff, in response to this claimed lack of knowledge, introduced defendant's testimony at a 1994 administrative hearing. That proceeding had been conducted for the purpose of adjudicating an accusation filed by the State Board of Barbering and Cosmetology seeking the revocation of Kaslar's cosmetologist license on the ground that his Riverside County conviction

demonstrated his unfitness for the profession. Called as a witness on Kaslar's behalf, defendant testified that at the time he decided to employ Kaslar as the supervisor at the Sacramento facility, he was fully aware of both the 1979 and 1991 convictions, and the circumstances underlying those offenses.

■ In addition to noting the inconsistency between defendant's present denial of knowledge concerning Kaslar's criminal history and his 1994 testimony, plaintiff argues that even if it is assumed that defendant was not aware of Kaslar's background at the time he hired him, such information was readily available and defendant was remiss in not conducting a sufficiently thorough background check.

It is apparent that this record raises triable issues as to defendant's knowledge of Kaslar's past misconduct, and whether Kaslar's duties at the Federico College of Hairstyling would foreseeably bring him into contact with minors. However, notwithstanding these disputed facts, we conclude the trial court should have granted defendant's motion for summary judgment. As we shall explain, even assuming for purposes of our present review that defendant knew, or should have known, about Kaslar's prior sex offenses against young males, and could have foreseen that Kaslar's duties at the hairstyling school would entail some degree of contact with such persons, as a matter of law, hiring Kaslar did not constitute a breach of defendant's limited duty to exercise reasonable care in his selection of employees.

■ "An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. . . . The rule of direct employer liability under the Restatement Second of Agency section 213 is: 'A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . [¶] . . . [¶] (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others . . . .' As explained in comment (d): 'The principal may be negligent because he has reason to know that the . . . agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor. . . . [¶] . . . An agent . . . may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity. . . . [¶] One who employs another to act for him is not liable . . .

merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. . . . [¶] Liability results . . . not because of the relation of the parties *but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment.* . . .' (Rest.2d Agency, *supra*, § 213, com. d., italics added.)" (*Roman Catholic Bishop* v. *Superior Court* (1996) 42 Cal.App.4th 1556, 1564-1565 [50 Cal.Rptr.2d 399]; and see *Evan F.* v. *Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 842-843 [10 Cal.Rptr.2d 748].)

■ Generally, whether a defendant was negligent constitutes a question of fact for the jury. (*Biles* v. *Richter* (1988) 206 Cal.App.3d 325, 332 [253 Cal.Rptr. 414]; *Osborn* v. *Hertz Corp.* (1988) 205 Cal.App.3d 703, 712-713 [252 Cal.Rptr. 613].) However, where reasonable jurors could draw only one conclusion from the evidence presented, lack of negligence may be determined as a matter of law, and summary judgment granted. (205 Cal.App.3d at pp. 712-713.) This is such a case.

■ As the court in *Roman Catholic Bishop* v. *Superior Court*, *supra*, 42 Cal.App.4th 1556, explained, an employer's duty, as defined by California authority and the Restatement, is breached only when the employer knows, or should know, facts which would warn a reasonable person that the employee presents an undue risk of harm to third persons in *light of the particular work to be performed.* Here, it cannot be said that defendant, even if he was aware of Kaslar's background, including the prior convictions and employment history, acted unreasonably in hiring Kaslar to supervise the students and manage certain business aspects at the Sacramento establishment.

We reach this conclusion for several reasons. First, and most significant, is the fact that Kaslar's prior convictions did not involve students or customers of the hairdressing establishments in which he was employed at the time the offenses were committed. In this regard, we note that the administrative proceeding in which the State Board of Barbering and Cosmetology sought revocation of Kaslar's license resulted in a 1994 decision by the administrative law judge (ALJ) rejecting the board's accusation. The ALJ, while acknowledging that Kaslar had a history of illegal homosexual conduct with male minors, found that there was no connection between this "abnormal sexual interest in children" and Kaslar's profession. The ALJ determined that Kaslar's convictions did not render him unqualified to practice his trade. In the present context, we similarly conclude that nothing

in Kaslar's history would have indicated to defendant that Kaslar posed a threat of harm to minors he might encounter in the course of his work.

This court's decision in *Evan F.* v. *Hughson United Methodist Church, supra*, 8 Cal.App.4th 828, on which plaintiff relies, is readily distinguishable. In *Evan F.*, defendant church was sued, inter alia, on the theory it was negligent in hiring a pastor who later molested a minor parishioner. The superior court granted the church's motion for summary judgment. We reversed in part, holding there was a triable issue as to whether the church was subject to liability because it should have known the pastor had a past history of molesting minor males, and was therefore unfit for the position. (8 Cal.App.4th at pp. 841-844.) However, the contrast between the facts in *Evan F.* and the present case highlights the significance of the Restatement's proviso that an employer's liability must be determined in the context of the specific duties the work entails. In *Evan F.* the pastor not only had a history of sexual exploitation of minors, but was hired first as a youth counselor, and later, when elevated to the position of pastor, acted as the victim's Sunday schoolteacher. In both roles, he was regularly entrusted with the care and supervision of minors. (8 Cal.App.4th at pp. 832-833.) Thus, when the Church employed the pastor, it was clear that the person chosen would regularly be in situations where minors were in his charge, possibly without others present, and thus susceptible to illicit approaches. In contrast, Kaslar's position required him only to supervise adult students and perform administrative tasks for the hairstyling college.

We recognize that it was foreseeable Kaslar would come into contact with young male customers and visitors in the course of his work, and that he was actually introduced to plaintiff at the business place. However, even assuming defendant's prior awareness that those meetings were likely, or inevitable, such unavoidable encounters do not provide a basis upon which it can be found that defendant acted unreasonably at the time he hired Kaslar. An employer is not charged with guaranteeing the safety of anyone his employee might incidentally meet while on the job against injuries inflicted independent of the performance of work-related functions. Rather, as we have previously explained, liability for negligence can be imposed only when the employer knows, or should know, that the employee, because of past behavior or other factors, is unfit for the specific tasks to be performed. Thus, we are persuaded that prior to his learning of Kaslar's offenses against plaintiff, the facts known or available to defendant did not, as a matter of law, render the decision to hire or thereafter retain Kaslar unreasonable.

In addition to asserting that defendant is liable for negligently hiring Kaslar, plaintiff also claims that defendant failed to supervise Kaslar adequately during the course of his employment at Federico's. In support of this theory plaintiff points to evidence which, he argues, demonstrates that Kaslar did actually "molest and fondle" children during working hours at the school. Plaintiff's evidence consists primarily of deposition testimony and declarations by himself and former students at the college. Those witnesses, in statements made after the offenses against plaintiff occurred and had become known, recalled some conduct by Kaslar while at work that involved the touching of children in a manner which in hindsight they interpreted as inappropriate or indicative of Kaslar's deviant sexual proclivities. However, there was no showing that any of these incidents was called to defendant's attention at the time they occurred. Nor is there anything in the record to indicate defendant should have suspected that Kaslar was engaging in inappropriate behavior on the job. Furthermore, the events described by plaintiff and the witnesses were not explicitly sexual, consisting of such occurrences as an unusually prolonged handshake, an overly friendly pat on the shoulder, or, on one occasion, Kaslar having a younger child sit in his lap. Such contact was, at the time it occurred, ambiguous at worst and did not result in any complaints to defendant by the children involved or their parents. Defendant expressly denied having any knowledge that Kaslar acted inappropriately at work until after the charges involving plaintiff became known, and plaintiff has offered no evidence to the contrary. Thus, even if the incidents described could be deemed a warning sign that Kaslar's continued employment might pose a risk to minors, they cannot be used to impose liability for negligence on defendant, who had no actual knowledge, or reason to suspect, that they had occurred.

We therefore conclude defendants' motion for summary judgment should have been granted on all causes of action, including the one for "negligent hiring."

We have previously notified the parties that we were considering issuance of a peremptory writ of mandate in the first instance, and afforded respondent superior court and plaintiff an opportunity to submit opposition to our doing so. Having complied with these procedural requirements, we are authorized to issue the peremptory writ forthwith. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying defendants' motion for summary judgment

and to grant that motion. Upon finality of this decision, the previously issued stay is vacated. Defendants shall recover their costs of this proceeding.

Davis, J., and Morrison, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied February 25, 1998.