Filed 5/27/26  Mackie v. Hanover Insurance Co. CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LAURA MACKIE et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> HANOVER INSURANCE COMPANY, INC., <br><br>     Intervenor and Respondent. | A164404 <br><br> (Contra Costa County <br> Super. Ct. No. MSC 18-02264) <br><br> **ORDER MODIFYING OPINION; AND DENYING PETITION FOR REHEARING** <br>    **[NO CHANGE IN JUDGMENT]** |

**THE COURT:**[*]

It is ordered that the opinion filed herein on May 15, 2026, be modified in the following particulars:

On page 2, lines 19-20, the following sentence is deleted:  "In late July 2016, Kimberly asked Mackie to take over management of Goldman Inc. because she no longer wanted to be involved in the business."  The deleted sentence on page 2, lines 19-20 is replaced with the following sentence:  "In late July 2016, Kimberly asked Mackie to take over management of Goldman

---

[*] Tucher, P. J., Fujisaki, J., and Petrou, J. participated in the decision.

1

Inc. because she no longer wanted to be involved in the day-to-day management of the business."

On page 3, lines 15-16, the following sentence is deleted: "In October 2016, Kimberly Goldman filed for divorce and found a job in Texas." The deleted sentence on page 3, lines 15-16 is replaced with the following sentence: "In October 2016, Kimberly Goldman filed for divorce and found a potential job in Texas."

This modification does not effect a change in the judgment.

Appellants' petition for rehearing is denied.

Dated:＿＿5/27/2026＿＿＿＿＿    ＿＿＿＿Tucher, P. J.＿＿＿＿＿＿＿
                                                    PRESIDING JUSTICE

*Mackie et al. v. Hanover Insurance Company, Inc.* (A164404)

Filed 5/15/26  Mackie v. Hanover Insurance Co. CA1/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAURA MACKIE et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>HANOVER INSURANCE<br>COMPANY, INC.,<br><br>    Intervenor and Respondent. | A164404<br><br>(Contra Costa County<br>Super. Ct. No. MSC 18-02264) |

Laura Mackie and Michael Hague (Plaintiffs) filed the underlying negligence action against Brian Goldman, MD, A Medical Corporation (Goldman Inc.), seeking damages for injuries they sustained when Brian Goldman's wife, Kimberly, struck them with her rental car before taking her own life.[1]  Respondent Hanover Insurance Company (Hanover) intervened to defend its insured and obtained summary judgment on behalf of Goldman Inc.  We affirm.

**FACTUAL BACKGROUND**

Brian Goldman is a licensed psychiatrist.  In 2014, he began providing mental health services through his corporation, Goldman Inc.  Brian's wife

---

[1]  To avoid confusion, we often refer to the Goldmans by their given names.  No disrespect is intended.

1

Kimberly did administrative work for the company, using such titles as practice manager, assistant secretary, and office administrator. Kimberly mostly worked from home, and occasionally came to the office for meetings. She was not compensated via Goldman Inc.'s payroll system, but instead took "office draws" from the corporate account.

In July 2016, Laura Mackie was hired by Kimberly to work for Goldman Inc. as an independent contractor. Mackie was retained as a risk management consultant, to assist with a data breach that occurred when two laptops containing confidential client data were stolen from Brian's car. Mackie also agreed to provide general administrative support.

Before Mackie went to work at Goldman Inc., she had known the Goldmans for several years. Mackie first met Brian in 1997 when he treated her son. A few years later, she worked for Brian as a paralegal, and by 2006 the two were close personal friends. Mackie also became friends with Kimberly, and in around 2014 she was appointed as a guardian for the Goldmans' children in the event that both parents were to die. Mackie's life partner, Michael Hague, knew the Goldmans but had no relationship with Goldman Inc., either as an employee or client.

In late July 2016, Kimberly asked Mackie to take over management of Goldman Inc. because she no longer wanted to be involved with the business. The Goldmans were having marital problems, so Kimberly went to Texas, where she had family and wanted to live.[2] Thereafter, in early September,

---

[2] Our background summary is based on facts elucidated during the summary judgment proceeding that Plaintiffs expressly acknowledged were undisputed or failed to dispute with contradictory evidence. For example, during oral argument before this court appellants' counsel argued that Kimberly did not *move* to Texas, but counsel did not dispute that Kimberly *went* to Texas, and that she wanted to move there. Indeed, Mackie testified at her deposition that Kimberly told Mackie she wanted to move to Texas.

2

Mackie discovered that Kimberly had misappropriated corporate funds from Goldman Inc. Following that discovery, Mackie and Brian blocked Kimberly from accessing the company's accounts and programs. They also changed the office locks to prevent Kimberly from gaining entry. Mackie and Brian had conversations about formally terminating Kimberly's employment but, according to Mackie, she could never " 'get Brian to officially fire' " Kimberly.

In October 2016, Kimberly Goldman filed for divorce and found a job in Texas. She also filed an application for spousal support, which was set for a hearing on November 7 in the Contra Costa County Superior Court. Meanwhile, Mackie assisted Brian with his divorce by handling his paperwork, finding him an attorney, and preparing a declaration in support of Brian's opposition to Kimberly's application for financial support. Prior to the family court hearing, Brian told Mackie he had stopped taking his vitamins because he was afraid Kimberly might poison him.

Kimberly returned from Texas to attend the November 7, 2016 hearing. Plaintiffs voluntarily attended the hearing "for the sole purpose" of providing emotional support to Brian.[3] After the hearing, Kimberly "ran over Plaintiffs and [Brian] in front of the courthouse with her rental car which she personally rented, and then committed suicide." Kimberly had twice attempted to commit suicide prior to November 7, 2016. But she had "no history of ever physically assaulting a co-worker or any non-familial adult,"

---

[3] At oral argument, appellants' counsel suggested there was a material dispute as to whether Kimberly attended the divorce hearing in her capacity as an employee of Goldman, Inc. We conclude otherwise from the record. In their Response to Hanover's Separate Statement of Undisputed Facts, plaintiffs expressly acknowledged the following fact was undisputed: "Plaintiffs voluntarily attended the divorce hearing for the sole purpose of providing emotional support for Dr. Goldman."

3

had never had a complaint filed against her or been the subject of a restraining order, and had never been charged with any violent crime.

## PROCEDURAL HISTORY

In November 2018, Plaintiffs filed a complaint for damages solely against Goldman Inc. In July 2019, the court permitted Hanover to intervene after Goldman Inc.'s former defense counsel withdrew from the case due to a breakdown in his relationship with Brian Goldman. In October 2022, Plaintiffs filed their operative second amended complaint, which alleged that Goldman Inc. and Hanover were each liable for negligently causing them physical and emotional harm. The trial court sustained a demurrer to Plaintiffs' claim against Hanover without leave to amend, and that ruling has not been challenged on appeal.

### *Plaintiffs' Allegations Against Goldman Inc.*

Plaintiffs allege that Goldman Inc. is liable for injuries they sustained on November 7, 2016, because it negligently hired and retained Kimberly Goldman as its employee. Facts alleged in support of this claim include the following: when Goldman Inc. employed Kimberly it knew she was mentally ill and dangerous; Plaintiffs were targeted by Kimberly because Mackie discovered Kimberly's embezzlement; and Brian Goldman refused to fire Kimberly after Mackie's discovery, thus exposing Plaintiffs to further danger.

Purporting to state two distinct causes of action, Plaintiffs allege that Goldman Inc. had a general duty of care to ensure that any third party was not exposed to foreseeable harm caused by an employee, and a specific duty not to hire or retain Kimberly Goldman, given her mental health issues and her "dangerous propensity for physically aggressive behavior and violence toward others." Plaintiffs allege that Goldman Inc. breached its duties to Plaintiffs by hiring and retaining Kimberly as an employee and by placing

4

her in a position of authority that required Plaintiffs to interact with her. Plaintiffs allege further that, as a "direct and proximate result" of Goldman Inc.'s decisions to hire and retain Kimberly in a position of authority, Plaintiffs suffered devastating physical and emotional injuries.

### Brian Goldman's Declaration

Plaintiffs attach to their complaint a declaration that Brian Goldman filed in a related insurance coverage action. Plaintiffs allege that Brian made several disclosures in his declaration which constitute admissions of Goldman's Inc.'s liability. The ostensible purpose of the declaration was to support Brian's contention that Hanover was violating its duty to defend him, and had erroneously rejected Plaintiffs' offer to settle their negligence claim against Goldman Inc. In that context, Brian made several statements that Plaintiffs rely on here.

For example, Brian stated he had repeatedly advised Hanover that he had hired Kimberly, "knowing full well that she was a danger to herself and others and ill equipped to handle her responsibilities." Brian stated he "should never have hired" Kimberly to be an administrator for his medical practice. According to Brian, Kimberly had mishandled the family finances for many years, and had a spending addiction and mental health issues. Brian stated that he "knew" Kimberly "was capable of having a psychotic break and could possibly hurt" herself or others, and yet he hired her to run his practice, and he did not fire her even after she was caught embezzling.

Brian also stated that there was "no doubt" in his mind that Kimberly blamed Mackie "for her reduced access to [Goldman Inc.'s] assets" and, "for that reason," she targeted Mackie on November 7, 2016. Brian felt that Goldman Inc. was "responsible" for Plaintiffs' injuries, and he believed that if Mackie had not discovered Kimberly's "thievery" and limited Kimberly's

5

access to corporate funds, Mackie would never have been targeted outside the courthouse.

## *Summary Judgment*

In December 2021, the trial court granted Hanover's motion for summary judgment, denying Plaintiffs' cross-motion as moot. As the court explained in its written order, to hold Goldman Inc. liable for negligence, Plaintiffs would have to establish the following elements: "(1) the existence of a legal duty to use due care; (2) a breach of that duty; and (3) the breach as a proximate cause of the plaintiff's injury." (*Federico v. Superior Court* (1997) 59 Cal.App.4th 1207, 1210–1211 (*Federico*).) Plaintiffs could not establish a duty of care that Goldman Inc. breached or proximate causation of Plaintiffs' injuries, the court found.

Regarding duty, the court applied the general rule that a defendant has no duty to protect a plaintiff from the criminal conduct of a third party unless the defendant has a "special relationship" to the third party or the foreseeable victim of the criminal conduct. (Citing *Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4th 1556, 1564 (*Roman Catholic Bishop*).) The court recognized that Goldman Inc.'s status as Kimberly's employer gave rise to a duty of care, but found that Plaintiffs could not establish liability on that basis because they could not show that hiring or retaining Kimberly created an undue risk of harm to others, when viewed in light of the work that Kimberly was hired to do. (Citing *Federico, supra,* 59 Cal.App.4th at p. 1214.) The court rejected Plaintiffs' theory that Goldman Inc. had a broad duty to ensure the safety of any person that its employee encountered while on the job. (See *id.* at p. 1215.)

The court also found that Plaintiffs could not establish a causal link between the alleged negligence in hiring Kimberly, Kimberly's employment

6

or work, and the harm Plaintiffs suffered. (Citing *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133 (*Phillips*).) To the contrary, the court found, the assault occurred during an " ' " 'extramural activity.' " ' " It did not occur at the workplace of Kimberly or the Plaintiffs, nor were any of them engaged in their regular work. Thus, while the motivation for the assault may have been subject to dispute, "it unquestionably took place outside of [Kimberly Goldman's] and Laura Mackie's employment duties and responsibilities."

Underlying the court's analysis was the issue of foreseeability, examined according to "the category of negligent conduct at issue." The court found that "[p]rior suicidal ideation does not reliably indicate Decedent would someday assault a work colleague with her vehicle outside a family law hearing." Thus, "[t]he foreseeability of that specific type of harm is simply too speculative and the causal nexus too attenuated" to establish liability.

## DISCUSSION

### I. Standard of Review

"We review a grant of summary judgment de novo, effectively assuming the role of a trial court, and applying the rules and standards that govern a trial court's determination of a motion for summary judgment." (*Building Industry Assn. of Bay Area v. City of San Ramon* (2016) 4 Cal.App.5th 62, 73.) Under those rules, summary judgment "may be granted to the defendant "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) The defendant bears the initial burden to show one or more elements of the cause of action cannot be established or that there is a complete defense. (*Aguilar*, at p. 850.) If this burden is met, the

7

burden shifts to the plaintiff to show a material factual issue exists as to the cause of action alleged or a defense thereto. (§ 473c, subd. (p).)

## II. Summary Judgment Was Properly Granted

Because Plaintiffs seek to hold Goldman Inc. liable in tort for the criminal conduct of a third party, their claim is subject to the general rule that "[a] person is ordinarily not liable for the actions of another and is under no duty to protect another from harm, in the absence of a special relationship of custody or control." (*Roman Catholic Bishop*, *supra*, 42 Cal.App.4th at p. 1564.) In cases involving a third party's criminal conduct, a duty of care may potentially arise from the defendant's special relationship with the person whose conduct needed to be controlled or with the foreseeable victim of the criminal conduct. (*Ibid*.)

Plaintiffs contend they can prove the defendant owed them a duty of care in this case because Kimberly was Goldman Inc.'s employee. "An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." (*Roman Catholic Bishop*, *supra*, 42 Cal.App.4th at p. 1564.) This rule of direct employer liability arises from the law of agency; a person who conducts an activity through an agent may be liable for harm *caused by that activity* if the person was negligent or reckless in the employment of an improper person to do work that involved a risk of harm to others. (*Id.* at p. 1565; Rest.2d Agency, § 213.) Liability results because the "*the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment*." (*Roman Catholic Bishop*, at p. 1565, quoting Rest.2d Agency, § 213, com. d.; see also *Federico*, *supra*, 59 Cal.App.4th at pp. 1213–1214.) California follows this rule, which has been incorporated into the Restatement Third of Agency. (*Phillips*, *supra*, 172 Cal.App.4th pp. 1139–

1140, citing Rest.3d Agency, § 7.05.) Establishing negligence liability under this rule requires " 'some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party.' " (*Phillips*, at p. 1140.)

A claim for negligent hiring or supervision can be based on an employee's deliberate wrongdoing, but the requirements for direct employer liability are "not easily met." (*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co., Inc.* (2018) 5 Cal.5th 216, 229–230 & fn. 13.) Goldman Inc., as the employer, has a "limited duty to exercise reasonable care in [its] selection of employees." (*Federico, supra*, 59 Cal.App.4th at p. 1213.) Given the limited scope of this duty, we conclude summary judgment was properly granted. Hanover carried its burden to establish that Plaintiffs cannot satisfy the breach element of their negligence claim, and Plaintiffs failed to respond with evidence creating a triable issue of material fact.[4]

The employer's duty to exercise reasonable care in the selection of employees "is breached only when the employer knows, or should know, facts which would warn a reasonable person that the employee presents an undue risk of harm to third persons in *light of the particular work to be performed*." (*Federico, supra*, 59 Cal.App.4th at p. 1214.) In the present case, Goldman Inc. hired Kimberly as an office administrator, a job in which she had very little personal interaction with anyone (except perhaps her husband). She worked remotely, in her latter years going into the office only a handful of times each year. Moreover, when Kimberly was hired, she had "no history of ever physically assaulting a co-worker or any nonfamilial adult." Together,

---

[4] In light of our conclusions, we do not address Hanover's argument that Goldman Inc.'s duty of care as Kimberly's employer was limited by policy factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108, or that Plaintiffs failed to establish proximate causation.

this evidence shows that Goldman Inc. did not fail to exercise due care by employing Kimberly because it had no antecedent reason to believe that hiring her to work as an office administrator would create an undue risk of physical harm to others. Thus, Hanover carried its initial burden of proving the breach element of Plaintiffs' negligent hiring claim cannot be established.

In responding to Hanover's summary judgment motion, Plaintiffs relied on Brian Goldman's declaration as proof that Goldman Inc. had prior knowledge of Kimberly's mental health issues, which left her ill-equipped to do her job. However, the declaration Brian filed to obtain insurance coverage for himself and financial compensation for his friends contains few evidentiary facts that are relevant to prove Plaintiffs' negligence claim. Brian expressed remorse and culpability for ignoring his wife's mental health problems. He also offered conclusory opinions that Kimberly was not equipped to do her job and that she posed a danger to herself and others. He did not state *facts* to show how or why the specific decision to employ Kimberly for the work that she was authorized to perform as an office administrator created an undue risk that she would commit an assault.

On appeal, Plaintiffs argue that Brian's declaration conclusively shows that Goldman Inc. breached its duty of care, and that the trial court committed two reversible errors by concluding otherwise.

First, Plaintiffs posit that the court erred by treating the fact that Kimberly had no criminal record as dispositive. Plaintiffs argue that California law focuses *only* on what the employer knew about the employee, not on the employee's criminal record. Moreover, they contend, requiring "prior criminal evidence of something the current incident proves creates an impossible circular standard and would render negligent hiring and retention law meaningless." This argument misreads the record at every turn. The

10

trial court *did not* rely solely on the fact that Kimberly had no criminal record. The court observed that the undisputed record shows that when Goldman Inc. hired and retained Kimberly she had never been charged with or convicted of a violent crime, nor had a legal complaint or restraining order been filed against her. The court also observed that "there is no admissible evidence of violent acts by the Decedent prior to the incident on November 7, 2016," and that even if Mackie's deposition testimony regarding allegedly violent interactions among members of the Goldman family were admissible, there is no evidence Kimberly ever committed a violent act in the workplace.[5]

Moreover, Plaintiffs' cited authority confirms the dispositive question is whether the employer knew or should have known facts sufficient to warn a reasonable person that hiring an employee into a particular role posed a danger to others. (*Federico, supra*, 59 Cal.App.4th at p. 1214.) Evidence that Kimberly had not engaged in dangerous conduct in the past is relevant to this issue; Plaintiffs cite no authority for contending otherwise. Finally, Plaintiffs' contention that the assault itself proves Kimberly was violent is a circular argument; the fact that Kimberly assaulted Plaintiffs after her

---

[5] In moving for summary judgment, Hanover maintained there was no evidence that (prior to the November 2016 incident) Kimberly was ever a serious danger to anyone other than herself. Plaintiffs purported to dispute the point by referencing Mackie's deposition testimony that the Goldmans' adult children had told her Kimberly became violent during arguments with them. In its summary judgment order, the trial court sustained Hanover's hearsay objection to Mackie's deposition testimony.

We reject Plaintiffs' contention that the hearsay ruling was reversible error. Plaintiffs fail to support this claim with meaningful analysis or citation to relevant authority, and they acknowledge that the excerpt from Mackie's deposition testimony upon which they rely is not part of the record on appeal. (See e.g., *In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 622, and authority cited [appellant's burden to "provide an adequate record on appeal and to affirmatively show error"].)

divorce hearing is not evidence that Goldman Inc. knew or should have known that hiring her would pose a risk of harm to others.

Plaintiffs also argue the trial court committed reversible error by excluding evidence of Brian's "statements and professional observations" as inadmissible expert opinions. Plaintiffs posit that Brian's entire declaration is admissible evidence because it constitutes an admission by a party under Evidence Code section 1220, regardless whether his observations qualify as expert opinion. Whatever doubts we may have about this legal theory, we need not resolve because Brian's declaration was *not* excluded from the summary judgment evidence. When addressing whether the decision to hire or retain Kimberly created an undue risk of harm, the court observed that Brian's personal opinion that Kimberly was " 'mentally unstable, suicidal and often threatening' " was not dispositive, but the court did not exclude any part of Brian's declaration as inadmissible.

Conducting our de novo review, we have taken account of Brian's declaration, and conclude that it lacks sufficient evidentiary value to raise a triable issue of material fact. Brian stated that Kimberly had mismanaged their family's finances and had "a spending addiction, as well as other mental health issues." Even if knowledge of these facts is imputed to Goldman Inc., Kimberly's alleged shortcomings do not provide material support for Plaintiffs' theory that hiring her to do administrative work put others at a risk of *physical harm*.

Brian also stated that he knew Kimberly "was capable of having a psychotic break and could possibly hurt herself" or others.[6] Brian's

---

[6] In their appellate briefs, Plaintiffs mischaracterize some statements that Brian made in his declaration. For example, Brian did not admit that he employed Kimberly despite knowing that she " 'would harm anyone.' " Brian stated that after Plaintiffs filed this lawsuit, Goldman Inc.'s former defense

12

professional experience may qualify him to offer an expert opinion but, as the trial court noted, the conclusion about Kimberly's mental health contained in Brian's declaration was not the result of a psychiatric examination. (See *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 524 [declaration that did not disclose matter relied on to form expert opinion inadmissible at summary judgment].) Moreover, "an opinion unsupported by reasons or explanations does not establish the absence of a material fact issue for trial, as required for summary judgment." (*Ibid*.) Here, even if we assume Brian's personal opinion that his wife was mentally unstable and potentially dangerous was informed by his professional experience, that opinion does not preclude granting summary judgment. This is because Brian did not attest to evidentiary facts about Kimberly's actual conduct that could be used to show that a reasonable person would assess Goldman Inc.'s decision to employ Kimberly as an office manager as creating an undue risk of physical harm to others.[7]

As we have noted, Plaintiffs also alleged that Goldman Inc. breached its duty of care by retaining Kimberly after Mackie discovered Kimberly's alleged malfeasance. Plaintiffs contend the evidence supports this theory because Brian admitted that Mackie advised him to fire Kimberly, and yet he could not bring himself to do it. According to Plaintiffs, no reasonable employer would retain a dangerous, mentally unstable employee after

---

counsel asked Brian whether he thought Kimberly had "violent tendencies or would harm anyone," and Brian "answered in the affirmative."

[7] Plaintiffs intimate that evidence Brian hid his vitamins out of fear Kimberly would poison him shows that Goldman Inc. knew Kimberly was dangerous. However, Brian did not disclose when or why he developed this fear, or provide any factual information to establish a nexus between Brian's fear of poisoning and the work that Kimberly was hired to do for Goldman Inc.

discovering a theft, and here Brian's admission that he failed to heed Mackie's advice to fire Kimberly "establishes negligent retention beyond dispute." Again we reject this flawed argument.

To establish that Goldman Inc. failed to exercise due care by retaining Kimberly, Plaintiffs have to show that retaining her *to perform particular work* created an undue risk of harm. (*Federico*, *supra*, 59 Cal.App.4th at p. 1214; see also *Roman Catholic Bishop*, *supra*, 42 Cal.App.4th at p. 1564 [employer who conducts an activity through an agent is liable only for harm caused by that activity]; *Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333, 1341 ["Failing to require a connection between the employment and the injured party would result in the employer becoming an insurer of the safety of every person with whom its employees come into contact, regardless of their relationship to the employer"].) If there were evidence that Kimberly performed some job function for Goldman Inc. after the embezzlement was discovered, perhaps that circumstance could present a triable issue, but here the evidence shows that Kimberly had stopped working and gone to Texas *before* Mackie made her discovery. And after Kimberly's malfeasance was discovered, Kimberly was denied access to Goldman Inc.'s systems and locked out of its office.

In light of this undisputed evidence, the parties' debate as to whether Kimberly remained formally an employee of Goldman Inc. after her financial malfeasance was discovered is beside the point. Because Goldman Inc. no longer engaged her to conduct any activities on its behalf, it was not liable for her conduct.

We recognize that at least one California court has held that, as a matter of law, "an employer does *not* owe a plaintiff a duty of care in a negligent hiring or retention action for an injury or other harm inflicted by a

14

*former* employee on the plaintiff." (*Phillips*, *supra*, 172 Cal.App.4th at pp. 1141, 1144.) And we accept, for purposes of this appeal, Plaintiffs' contention that there is a conflict in the evidence as to whether Goldman Inc. effectively terminated Kimberly's employment before she assaulted the Plaintiffs. For that reason, we do not rely on the bright-line rule of *Phillips* and do not hold that Goldman Inc. owed the Plaintiffs no duty. Instead, we follow *Federico* in holding that, because the employer owed Plaintiffs a duty that is narrowly defined, on the undisputed facts of this case there was no breach of that duty as a matter of law. (See *Federico*, *supra*, 59 Cal.App.4th at pp. 1213–1214.) Even assuming Kimberly was still technically an employee on November 7, 2016, Plaintiffs fail to show that Brian's alleged refusal to fire her created an undue risk of harm to others. Instead, the undisputed facts indicate that Kimberly was precluded from performing *any work* for Goldman Inc. after the embezzlement was discovered.

In *Federico*, a hairstyling school was sued by the victim of an act of sexual molestation committed by one of the school's employees. (*Federico*, *supra*, 59 Cal.App.4th at p. 1210.) The plaintiff had met the employee at the school, which his mother attended, on several occasions. Then one Sunday, the employee took the plaintiff on an outing to Old Sacramento, and the two returned afterwards to the employee's home, where the act of oral copulation occurred. (*Id.* at pp. 1211–1212.) In reviewing an order denying the employer summary judgment, the *Federico* court found there were triable issues as to whether the employer knew, or should have known, that the employee had a "history of deviant sexual conduct with young males," and as to whether the employee's duties "would foreseeably bring him into contact with minors." (*Id.* at pp. 1212–1213.) Yet the court directed summary judgment in favor of the defendants, finding as a matter of law that the

15

school's decisions to hire and retain the employee did not breach the employer's "limited duty to exercise reasonable care." (*Id.* at pp. 1213, 1215.)

In reaching this conclusion, the *Federico* court hewed to the principles outlined above and set forth in the Restatement and in *Roman Catholic Bishops.* Although "it was foreseeable" that the employee would come into contact with young males at the hairstyling school and he "was actually introduced to plaintiff at the business place," the plaintiff could not establish liability under a free-wheeling foreseeability theory. (*Federico, supra,* 59 Cal.App.4th at p. 1215.) "[A]n employer's liability must be determined in the context of the specific duties the work entails." (*Ibid.*) And there was nothing about the employee's work history or the nature of the job the employee was being hired into that indicated he would pose "a threat of harm to minors he might encounter in the course of his work." (*Ibid.*)

Similarly, here, there was nothing about Kimberly's work history or the nature of her responsibilities as an office manager that indicated she would pose a threat of physical harm to others in the course of this work. In the case before us, the connection between the employer and Plaintiffs' injuries is at least as tenuous as it was in *Federico*, in the sense that Kimberly assaulted her husband and Plaintiffs immediately after a family court hearing in a divorce case, an event that had nothing to do with Goldman Inc. or its decision to employ Kimberly, and Plaintiffs were present *solely* to provide emotional support to Brian. But even if there could be a factual dispute as to whether Mackie's discovery of Kimberly's embezzlement played some role in motivating Kimberly's assault, that dispute would not be material to the outcome of this case. Given the undisputed evidence, including that before the assault Kimberly had never been violent except perhaps in family disputes, and that Kimberly was employed at Goldman Inc.

16

in a capacity that caused her to have little interaction with others, we conclude Hanover has established it is entitled to summary judgment as a matter of law.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to Hanover.

TUCHER, P. J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*Mackie et al. v. Hanover Insurance Company, Inc.* (A164404)

17